670 So.2d 1206 (1996)
Rumae Nell ANDRUS
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 95-C-0801.
Supreme Court of Louisiana.
March 22, 1996.
Rehearing Denied May 10, 1996.
*1207 Terry L. Rowe, Lafayette, for Applicant.
Kenneth Pitre, Eunice, for Respondent.
LEMMON, Justice.[*]
We granted certiorari to review the court of appeal's seven hundred percent increase in the amount of general damages awarded by the jury in this personal injury case. We conclude that the court of appeal erred in determining that the trial court jury had abused its much discretion as to general damages for past and future mental pain and suffering and loss of consortium, and we accordingly reverse that portion of the judgment and reinstate the trial court's award. We further conclude that the court of appeal, after correctly determining that the trial court jury had abused its discretion as to general damages for past and future physical pain and suffering, erred in increasing the award above the lowest reasonable amount.

I
Mrs. Rumae Andrus was injured in an automobile accident while in the course of her employment. In the ensuing litigation, Mrs. Andrus settled with several parties for $110,000, the total liability insurance policy limits, and proceeded to trial against State Farm Mutual Automobile Insurance Company, her employer's uninsured/underinsured motorist carrier. The jury returned a verdict awarding Mrs. Andrus a total of $98,160.95, as follows:

Past and future physical pain and
suffering $15,000.00
Past medical expenses $26,000.00
Future medical expenses $20,000.00
Past loss earnings $27,160.95
Future loss earnings and lost
earnings capacity $ -0-
Past and future mental pain and
suffering, loss of physical function
and loss of capacity for enjoyment
of life $10,000.00
 __________
Total $98,160.95

Additionally, the jury declined to award Mr. Andrus any damages for loss of consortium. Because the amount of the verdict was less than the $110,000 threshold for the liability of the underinsured motorist carrier, the trial court dismissed State Farm from the action.
On appeal, a divided panel of the intermediate court amended the general damages award, concluding that the lowest amounts a reasonable trier of fact could have awarded were $125,000.00 for past and future physical pain and suffering and $75,000.00 for past and future mental pain and suffering. 94-161 (La.App. 3 Cir. 12/28/94), 650 So.2d 275. Increasing these general damages awards from $25,000 to $200,000, the court stated:
In light of the Youn [v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993)] opinion, we have reviewed the particular injuries sustained by ANDRUS from the accident and the particular effects that they had on her. Even when we considered the evidence of the injuries and resulting damages in a light most favorable toward the defendant, we find that the trial court's award of damages to ANDRUS was not reasonable.
Id. at 279. Furthermore, the court held that the jury erred in finding Mr. Andrus had suffered no damages for loss of consortium. The court reviewed the record de novo and awarded him $25,000.00.
We granted certiorari to review the decision of the court of appeal. 95-0801 (La. 5/12/95), 654 So.2d 341.

II
In the rear-end collision, Mrs. Andrus' seat broke, her head hit the roof, and her chin hit *1208 the steering wheel. In this action she claimed damages for three physical injuries: (1) a compression fracture of the thoracic vertebra at the T11 level, (2) a herniated disc at the C3-4 level, and (3) temporomandibular joint (TMJ) arthralgia.
Dr. John Cobb, an orthopedic surgeon, examined Mrs. Andrus at the hospital on the day of the May 23, 1991 accident. He diagnosed a thirty percent compression fracture of the thoracic spine and fitted her with a Jewit brace from the pelvis to the upper chest area. She was discharged from the hospital two days later.
Because Mrs. Andrus' severe headaches continued and she began experiencing jaw pain, locking and spasms, she was referred to Dr. Mark Coreil, an orthodontist, in June 1991. Dr. Coreil diagnosed Mrs. Andrus' condition as TMJ arthralgia and fitted her with a jaw splint. Mrs. Andrus responded well immediately to the splint therapy, was doing "exceptionally well" by September, and was free of pain from that injury within six months.
In the meantime Dr. Cobb continued to treat Mrs. Andrus' thoracic spine fracture, noting that she was "about healed and progressing well" seven weeks after the accident. She returned to her job as a teacher teaching in August for the fall semester, although she was still wearing the brace at times.
When Mrs. Andrus' complaints of neck pain persisted, Dr. Cobb performed a magnetic resonance imaging test in early October. He opined that she was suffering from spondylosis, a preexisting degenerative condition, in the cervical spine at the C3-4 level and recommended further studies of the cervical discs. He estimated that she was "relatively disabled" during the five months he treated her, stating that she was unable to do lifting, bending and other types of heavy work activity. He assigned her a ten percent anatomical disability of the body as a whole.
Mrs. Andrus was also treated between June and December 1991 by Dr. Oscar Rodriguez, her family internist who had previously treated her for a stomach ulcer, stress, and depression in the early 1980s. After the 1991 accident, Dr. Rodriguez diagnosed a stomach ulcer, probably caused by stress, and the ulcer responded to medication. Because Mrs. Andrus was complaining of numbness and weakness in the right upper extremity and of neck pain, he referred her to Dr. Robert Rivet, a neurosurgeon.
Dr. Rivet first examined Mrs. Andrus on December 20, 1991. A myelogram revealed cervical spondylosis with nerve root fracture at C3-4. On January 8, 1992, Dr. Rivet performed a surgical fusion of the involved area, and Mrs. Andrus obtained immediate relief from the headaches. After discharge from the hospital three days later, Mrs. Andrus wore a hard collar to support her neck during daytime hours and a soft collar at night for approximately three months. She made an excellent and uneventful recovery. By July 13, 1992, the fusion was solid, and she was free of pain and nerve pressure. Dr. Rivet therefore discharged her on that date to return to teaching.
When Mrs. Andrus' symptoms flared up in late September after manipulation in physical therapy, she consulted Dr. Robert Franklin, a physical medicine and rehabilitation specialist, on October 14, 1992 upon the recommendation of Dr. Rivet. For her soft tissue pain, he prescribed medication, a special brassiere for improving posture and relieving neck symptoms, and a TENS unit, a small electrical device used for low-grade electrical stimulus of the central nervous system. When she exhibited improvement by February 1993, he encouraged her to lose weight[1] and released her to return to teaching, but instructed her to avoid lifting heavy weights.
Thus, Mrs. Andrus, after returning to teaching in August 1991 following the late May accident, worked until December 1991 and then missed the spring semester following the surgery and part of the fall semester during rehabilitation after the physical therapy incident. She returned to work full time in February, 1993. At the time of the July 1993 trial, she was teaching full time.
Mrs. Andrus also claimed damages for emotional injuries. She had been diagnosed *1209 in the early 1980s with bipolar disorder, which involved episodes of depression alternating with episodes of overactivity and elevated mood or mania. She had experienced one psychotic episode about ten years before the accident, during which she was delusional about being Jesus, was agitated and had difficulty sleeping, and finally attempted suicide.
Several months before the May 1991 accident, Mrs. Andrus was in partial remission of the bipolar condition, but was taking anti-depressant medication. She consulted Dr. John Smith, a psychiatrist who was also treating Mrs. Andrus' son after hospitalizing him for psychiatric problems. Dr. Smith attributed Mrs. Andrus' pre-accident stress at least in part of her son's problems.
After the accident Dr. Smith diagnosed moderate depression secondary to the injuries in the accident. He increased the dosage of the medication, noting her fear that she would never work again and her corresponding loss of self-esteem. He added that Mrs. Andrus responds well to anti-depressants and did not need lengthy or extensive treatment. He referred her to Dr. Stewart Kutz, a psychologist who conducted group pain therapy, and did not see her again.
Mrs. Andrus consulted with Dr. Kutz on two successive days in July 1991 (two months after the accident). Psychological testing indicated "very mild depression," which Dr. Kutz attributed to stress from the accident and from her son's psychiatric problems. She never returned to Dr. Kutz.
In November 1991, Mrs. Andrus consulted Dr. Harry Guiterrez, a psychiatrist, complaining of depressed mood, sleep disorder and loss of capacity to enjoy life.[2] He diagnosed a bipolar disorder in partial remission, and he believed that her absence from work contributed to her depression. He prescribed lithium to boost the effect of the anti-depressant medication she was taking. He followed her through February 1992 when she returned to work, and in May 1992 he found that there were no depressive or manic symptoms. He expected her to be on anti-depressant medication intermittently in the future, as she had been for a number of years before the accident.
Mrs. Andrus testified that she suffered severe headaches after the accident which did not subside until the surgery eight months later. She was "really depressed" because she was at the apex of her career, having earned the regional teacher of the year award and been a finalist for the state award. She stated that the doctor told her that there was "a big risk of paralysis" if the compression fracture worsened and that "you're not going to be able to go back to work." She didn't know "how much longer [she] really could take the headache without committing suicide." She conceded that her headaches and numbness in her arms improved after surgery, but less severe headaches continued sporadically and the numbness recurred after the physical therapy manipulation incident. According to Mrs. Andrus, she gardened, fished, hunted, rode motorcycles and engaged in numerous other physical activities before the accident, but could not even sweep the house at time of trial and was uncertain how much longer she would be able to work.
Of the $26,600 in medical bills claimed by Mrs. Andrus, the following were the most significant:[3]

Initial hospitalization $1,397
Dr. Cobb (thoracic compression
fracture) $1,065
Dr. Coreil (TMJ) $1,295
Pre-surgery testing $2,543
Surgery and hospital $8,489
Dr. Rivet (surgery) $4,630
Psychiatric treatment $ 600
Dr. Franklin (physical therapy
flareup) $ 410

The sole evidence of the need for future medical treatment was the testimony of Dr. Cobb, who had seen her only once since October 1991, that he could only "speculate" on the need for future medical treatment and gave cost estimates "based on those assumptions" of $3,000 for radio frequency rhizotomy and $30,000 for surgical fusion if she *1210 developed significant stenosis (narrowing of the spinal canal).
As to Mr. Andrus' loss of consortium, he was a surveyor who was frequently away from home because he traveled continuously throughout North America. He testified that his wife since the accident has been generally depressed, afraid of paralysis, and unable to do housework, pursue her hobbies, or engage in sexual relations, although the latter situation improved after surgery. Before the surgery, he was genuinely concerned about his wife's talk of suicide. At the time of trial, he with the help of his two married daughters were doing the housework, caring for the two children still at home, and doing all of the gardening.

III
In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979). The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Id. Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id.
In the present case, the court of appeal determined that the trial court's general damages awards of $15,000.00 and $10,000.00 were an abuse of discretion, as was the failure to award loss of consortium damages. After this determination, the court of appeal reviewed cases involving similar injuries to determine the appropriate range of damages and increased the awards to a total of $200,000.00, while awarding $25,000.00 for loss of consortium.
At the outset we emphasize that the rationale of Reck, Coco and Youn applies to appeals by defendants as well as to appeals by plaintiffs. The threshold determination by either the court of appeal or this court is whether the amounts awarded by the trial court constituted an abuse of discretion, in either direction. The standard for that determination is both difficult to express and difficult to apply.
The present case at this stage focuses on two awards, (1) past and future physical pain and suffering, and (2) past and future mental pain and suffering. We will discuss each award separately.
Mrs. Andrus sustained a compression fracture of the thoracic vertebra and a TMJ injury, both of which were initially very painful but were resolved within five or six months after the May 1991 accident. Her most significant injury was to her cervical spine, which apparently aggravated her pre-existing but non-symptomatic spondylosis and caused a nerve root fracture. Unlike the compression fracture that resolved in a few months, the cervical injury worsened over the period of time following the accident. However, the January 1992 surgical fusion was successful and achieved an excellent recovery within six months of the surgery, although a flare-up in late fall of the year, apparently caused by manipulation in physical therapy, caused her additional pain and suffering, as well as causing her to miss an additional period of teaching.
The jury's award of $15,000 for serious injuries, including a cervical disc herniation, is difficult to explain. The jury could have viewed the medical evidence as establishing substantial recovery from the thoracic and TMJ injuries within six months of the accident, and from the cervical injury within six months of the surgery and fourteen months *1211 of the accident. However, the very serious cervical injury caused considerable painful effects that were only relieved by the eventual surgery and left her with permanent limitations on lifting, stooping and other physical activities. Perhaps the jury viewed as exaggerated Mrs. Andrus' complaints (unsupported by medical evidence) of fear of paralysis, of contemplating suicide because of the severity of her headaches, and of continuing severe pain after the discharges by the various doctors. More than likely, the jury accepted State Farm's argument, which has been repeated in this court, that the true etiologies of Mrs. Andrus' cervical and TMJ problems were her preexisting spondylosis and history of bruxism and teeth grinding, and that there was only minimal aggravation of these preexisting conditions. The evidence, however, does not establish two permissible views on the causation issue. All of the medical testimony clearly attributed the three physical injuries to the accident. In any event, the jury's award of only $15,000 for these serious physical injuries was an abuse of discretion, as determined by the court of appeal.
But the jury's determination that Mrs. Andrus' injuries and suffering, as established by the medical evidence, were not as significant as her complaints cannot be disregarded. The issue of deference to the trier of fact by an appellate court in quantum reviews is different from fact-finding reviews regarding liability. When the jury is tainted by incorrect and prejudicial instructions or rulings on admissibility of evidence in a tort case, the jury's liability decision is not entitled to any deference, and the appellate court decides the case on the record without according any weight to the jury's liability decision. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). However, when the jury abuses its discretion by rendering an excessive or inadequate quantum decision, the jury's appreciation of the evidence regarding the extent of the injuries is still entitled to some deference. The appellate court, respecting the jury's decision to some extent, merely raises the jury's inadequate award to the lowest reasonable amount or reduces the jury's excessive award to the highest reasonable amount. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
Here, the court of appeal stated these principles, but raised the jury's award beyond the lowest reasonable amount in view of the cases surveyed by the court. After reviewing the cases with similar injuries cited by the court of appeal and by both parties, we fix the award for past and future physical pain and suffering at $75,000.
As to the mental or emotional pain and suffering, the jury's award of $10,000 could have minimized the significance of her bipolar depression that was undoubtedly aggravated by the accident, but was of long-standing and recent recurrence before the accident, was contributed to significantly by her son's psychiatric problems, and was quickly controlled within reasonable boundaries by temporary changes in the pre-accident medication.
There was evidence that Mrs. Andrus was sincerely dedicated to her profession and was deeply depressed by the delays and the uncertainties in the course of returning to her duties. This and other evidence, if accepted by the jury, could have formed the basis for support of a much greater award. However, while the evidence clearly preponderated that the accident caused emotional injuries to Mrs. Andrus, it was up to the jury to weigh the evidence as to the extent of those injuries. While we, if sitting as a trial court, might have granted a much higher award of damages on this record for emotional pain and suffering, we as an appellate court cannot say that this jury abused its discretion in refusing to do so. Neither can we say that the jury was clearly wrong in rejecting plaintiffs' evidence as to the consortium claim.
For these reasons, the portion of the judgment of the court of appeal awarding $125,000 for past and future physical pain and suffering is reduced to $75,000. The remainder of the judgment of the court of appeal is set aside, and the judgment of the trial court is reinstated.
HIGHTOWER, J., dissents from that part of the opinion holding any physical pain *1212 award of less than $75,000 to be unacceptable, but readily concurs in all other aspects.
NOTES
[*] Judge Lemmie O. Hightower, Court of Appeal, Second Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J. Victory, J., not on panel. Rule IV, Part 2, § 3.
[1] Mrs. Andrus was five feet eight inches tall and weighed two hundred and forty pounds.
[2] In the meantime, Dr. Smith had left private practice.
[3] The remaining medical bills consisted primarily of bills for medications.