IzGUIDBY, Judge.
Appellees, Amelia Matthews (“Ms. Matthews”) and Thelma Green (“Ms. Green”) brought a suit against appellant, Rhodes United Fidelity Funeral Home (“Rhodes”), for the alleged wrongful detention of the body of Charlie Matthews (“decedent”), the deceased husband[2] and father of the two appellees. Rhodes has appealed from the trial court judgment awarding $8,000 to each of the two appellees for their , emotional distress that resulted from Rhodes’s refusal to release decedent’s body to the appellees.
FACTUAL BACKGROUND
On Friday, September 2, 1988, decedent died at Baton Rouge General Hospital. Pursuant to Ms. Green’s request, the hospital contacted Rhodes to pick up decedent’s body. On the same day, Ms. Green signed a form authorizing Rhodes to remove and embalm the remains of decedent. Ms. Green then left town with her husband to go on a trip for the labor dáy holiday weekend, leaving the body of decedent in the custody of Rhodes.
Decedent had a funeral insurance policy with United Fidelity-Victory Life Insurance Company, which policy was one that Rhodes customarily honored. Decedent’s sister, Arma Bell (“Ms. Bell”), was the beneficiary under the policy which provided a $1,250.00 burial benefit. Ms. Bell flew in from California during the labor day holiday weekend and made the funeral service arrangements with Sidney Minor (“Mr. Minor”), the funeral director and manager of Rhodes.
After Ms. Green returned from her trip, she contacted Mr. Minor to make the funeral arrangements. Mr. Minor advised Ms. Green that the arrangements had already been taken care of through his dealings with Ms. Bell, the beneficiary of the funeral policy. Ms. Green requested that decedent’s body be transferred to the Capital Funeral Home, Inc., (“Capital”); however, the parties disagree regarding the date on which the request was initially made. Ms. Green contends she made the request on September 6, 1988, whereas, Mr. Minor asserts that the request for the body was not made until 1:00 p.m. Ron September 8, 1988. The parties agree that the body was delivered to Capital, dressed and in casket, in the late afternoon on September 8,1988.
Ms. Green and Ms. Matthews filed the subject petition for damages against Rhodes. Rhodes answered the petition and asserted a reconventional demand for the services it preformed in embalming, preparing and dressing the body and the casket supplied. A bench trial was held on September 28,1998, at which trial Ms. Matthews did not testify. On September 15,1994, the trial court issued oral reasons for judgment. Ap-pellees were awarded $8,000.00 each for their emotional distress suffered as a result of Rhodes’s violation of La. R.S. 8:655(A).[3] According to the trial court’s oral reasons, Rhodes violated this statute when it refused to release decedent’s body to appellees who were decedent’s spouse and daughter. A judgment reflecting the oral reasons was signed by the trial court on July 15, 1995. Neither the oral reasons nor the judgment addressed the reconventional demand asserted by Rhodes.[4]
*1378 Rhodes has suspensively appealed from the judgment asserting the following assignments of error:
1) The trial court erred in granting judgment for Ms. Matthews and Ms. Green, pursuant to La. R.S. 8:655(A), and in not finding that Rhodes Funeral Home acted reasonably in this matter;
2) The trial court erred in granting judgment in the amount of $8,000.00 to Ms. Matthews as there was no evidence entered into the record of any kind regarding Ms. Matthews, including evidence of any distress suffered by her;
3) The trial court erred in failing to award Rhodes a reasonable amount on its re-conventional demand; and
4) The trial court’s award of $8,000.00 to each appellee is clearly excessive.
ASSIGNMENT OF ERROR NO. 1
The first assignment of error addresses the propriety of the liability finding by the trial court. Rhodes contends in its brief that the trial court erred in finding a violation of La.R.S. 8:655 because Ms. Green was not the person with the right to request a release of decedent’s body. While we find that the record supports a finding that Ms. Green acted on behalf of her mother (who had priority regarding the right to control interment under La.R.S. 8:655) when she requested the transfer of decedent’s body, we need not address whether La.R.S. 8:655 was violated because Louisiana jurisprudence allows recovery of damages for the wrongful detention of the body of a deceased parent or spouse, irrespective of a violation of La.R.S. 8:655. See Morgan v. Richmond, 336 So.2d 342, 343 (La.App. 1st Cir.1976). Assuming proof of a request for the release of the body exists, the test for recovery for wrongful detention is whether the funeral home was justified in its refusal to release the body. See Morgan, 336 So.2d at 343, n. 1. This recovery is not dependent on whether it was the spouse or child of the decedent who made the request for release of the body.
Although not stated in the oral reasons for judgment, the trial court apparently made a factual finding that a request was made by appellees for the transfer of decedent’s body to Capital. Additionally, the trial court apparently concluded that Rhodes did not comply with the request in a reasonable amount of time. These are factual findings by the trial court and a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is whether the factfinder’s conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Thus, if the trial court’s or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Finally, where two permissible views of the evidence Rexist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882-83.
In the present case, it is undisputed that Ms. Green made a request for the transfer of decedent’s body to Capital, and that the transfer took place on the afternoon of September 8, 1988. However, there was conflicting testimony regarding the date on which the first request was made. In finding Rhodes hable, the trial court apparently believed the testimony of Ms. Green and her witnesses[5] that she first requested the transfer of the body on September 6, 1988, and that the delay in the transfer was unreasonable. While the record could also support a *1379 factual finding that the first request was not made until September 8, 1988, the trial court’s apparent conclusion that there was a one to two day delay in effecting the transfer was also a reasonable conclusion. Thus, after a review of the record in its entirety, we conclude that the trial court was presented with two permissible views concerning the time that elapsed between the first request for the transfer of decedent’s body and the actual transfer that took place on September 8, 1988. The trial court’s finding that there was an unreasonable delay in the transfer was not manifestly erroneous. Consequently, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
The second assignment of error addresses the propriety of the $8,000.00 damage award to Ms. Matthews for emotional distress. There was no evidence of any emotional distress sustained by Ms. Matthews. Neither Ms. Matthews nor any other witness testified to the damages Ms. Matthews suffered as a result of any delay in transferring the body of her estranged husband to Capital. Moreover, there were no documents or other evidence introduced at the trial to reflect the emotional distress allegedly suffered by Ms. Matthews. Thus, there was no basis to award any damages to Ms. Matthews. Accordingly, we vacate the damage award to Ms. Matthews.
ASSIGNMENT OF ERROR NO. 3
|6In the third assignment of error, Rhodes complains about the denial of its reconventional demand for the services performed. In connection with this assignment of error, we note that Rhodes failed to put forth sufficient evidence at trial to prove the allegations made in its reconventional demand.
In its reconventional demand, Rhodes contended that it performed services in connection with decedent’s funeral that totalled $2,850.00. Additionally, Rhodes alleged that it paid a claim that was made two months after the burial for the amount covered by the burial policy of Mr. Matthews. Both of these allegations were denied by appellees in their answer to the reconventional demand.
At trial, Rhodes did not put forth any evidence regarding the value of the services rendered during the time it had custody of decedent’s body. Moreover, there was no evidence presented to prove Rhodes’s allegation that it had paid the burial benefit in cash. While Mr. Minor testified that he never received the benefit of the $1,250.00 payment, this testimony did not establish either the value of the services performed by Rhodes or that Rhodes had made a cash payment of the claim made on the funeral policy.[6] Thus, we cannot say that Rhodes proved it was entitled to any relief on its reconventional demand.
ASSIGNMENT OF ERROR NO. 4
In the fourth assignment of error, Rhodes contends that the two $8,000.00 damage awards to appellees were excessive.[7] In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. Andrus v. State Farm Mutual Automobile Insurance Company, 95-0801 (La. 3/22/96); 670 So.2d 1206, 1210. The role of an appellate court in reviewing awards of general damages is not to decide 17what it considers to be an appropriate award, but rather to review the exercise *1380 of discretion by the trial court. Andrus, 670 So.2d at 1210; Reck v. Stevens, 373 So.2d 498 (La.1979). Only if the reviewing court determines that the trial court has abused its much discretion may it refer to the prior awards in similar eases and then only to determine the highest or lowest point of an award within that discretion. Andrus, 670 So.2d at 1210; Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976).
Because discretion vested in the trial court is great, and even vast, an appellate court should rarely disturb an award of general damages. Andrus, 670 So.2d at 1210; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Reasonable persons frequently disagree about the measure of general damages in a particular ease. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Andrus, 670 So.2d at 1210; Youn, 623 So.2d at 1261. This rationale applies to appeals by defendants as well as to appeals by plaintiffs. Andrus, 670 So.2d at 1210. However, when the trial court abuses its discretion by rendering an excessive or inadequate quantum decision, the appellate court, respecting the trial court’s decision to some extent, merely raises the trial court’s inadequate award to the lowest reasonable amount or reduces the trial court’s excessive award to the highest reasonable amount. Andrus, 670 So.2d at 1211.
Applying the foregoing standards of review, we find this case presents one of the rare occasions that warrants the disturbance of a general damage award. At trial, Ms. Green testified that she “still hurt[s] for what [Mr. Minor] did [to her]” and that she was upset and had to go to the doctor several times. However, there was no evidence as to why she went to the doctor or what type of medical treatment was sought. There were no medical records introduced to establish that medical treatment for her alleged emotional distress was actually sought and received. Moreover, her testimony did not demonstrate that she suffered the extraordinary degree of emotional distress that would Isbe necessary to warrant an $8,000.00 award.[8] For these reasons, we conclude that the $8,000.00 general damage award to Ms. Green was a clear abuse of the trial court’s vast discretion and that the highest reasonable amount that could have been awarded to Ms. Green under these facts was $2,000.00. Accordingly, the general damage award to Ms. Green is reduced to $2,000.00.
For the foregoing reasons, the judgment of the trial court is affirmed in part and modified in part and reversed in part. That part of the judgment finding Rhodes liable to Thelma Green is affirmed. The award of $8,000.00 in damages to Thelma Green is modified to a $2,000.00 award. That part of the judgment awarding Amelia Matthews $8,000.00 in damages is reversed. Finally, the trial court’s rejection of Rhodes’s recon-ventional demand is affirmed. Costs of this appeal are to be shared equally by the parties.
AFFIRMED IN PART, MODIFIED IN PART, REVERSED IN PART.

. The record reveals that decedent and Ms. Matthews were physically, but not legally, separated at the time of decedent's death.

. La.R.S. 8:655 provides in pertinent part:
A. The right to control interment, as defined in R.S. 8:1(26), of the remains of a deceased person, unless other specific directions have been given by the decedent in the form of a written and notarized declaration, vests in and devolves upon the following in the order named:
(1) The surviving spouse, if not judicially separated from the decedent.
(2) A majority of the surviving adult children of the decedent....

.Silence in a judgment as to any part of the demand or issue litigated is construed as a rejection of that claim or issue by the trial court. Fountain v. Fountain, 93-2176 (La.App. 1st Cir. 10/7/94); 644 So.2d 733, 743. Thus, for purposes of this appeal, we will consider the recon-ventional demand as having been rejected by the trial court.

. James A. Green, Ms. Green’s husband, testified that "about a day and a half” passed between the time his wife first asked for decedent’s body and the delivery of the body to Capital on the afternoon of September 8, 1988. Reverend James R. Thomas, chaplain at Capital at the time of the subject incident, testified that he spoke with the officials at Rhodes and they refused to release the body until the next day.

. The funeral policy’s description of funeral service provided that the following services would be provided where the insured had a $1,250.00 burial benefit: “Statewood or Metal Casket; Embalming and Beautician Service; Burial Garments; Use of Parlor, Chapel and all Funeral Home facilities; Recording of all Certificates for Burial; Maid Services; Hearse Service; Two cars; Removal of Remains from local residence or hospital to Funeral Home.” The policy also contained an "Optional Cash Settlement” whereby a beneficiary who did not avail himself of the contractual services set forth in the policy could receive a cash payment of 100% of the face amount of the policy. Based on Mr. Minor's testimony relating a general description of the services performed on decedent, these services were covered under the description of funeral service contained in the policy. Thus, even if we were to assume that the value of the services provided by Rhodes was proven at the trial, absent proof that the optional cash settlement was utilized by the beneficiary in this case, Rhodes is not entitled to relief on its reconven-tional demand.

. Because we have vacated the damage award to Ms. Matthews, we will only address the excessive damage claim as it relates to Ms. Green's award.

. Appellants referred us to Morgan v. Richmond, 336 So.2d 342 (La.App. 1st Cir.1976) as support for their contention that the damage award to Mrs. Green is excessive. There were no other reported cases that addressed the adequacy or inadequacy of damage awards for the wrongful detention of a decedent’s body. In Morgan, the trial court awarded $250.00 to each of six children of the decedent for a funeral home’s refusal to release the body of their deceased mother unless the plaintiffs first paid $150.00. We note that Morgan was decided twenty years ago and thus, does not provide us with complete guidance as to what currently constitutes a reasonable award for wrongful detention of a decedent's body. However, we also recognize that the award in Morgan was based on facts more egregious than those presented by the case currently before us and that the trial court's $8,000.00 award to Mrs. Green is thirty-one times greater than the award in Morgan.