732 So.2d 83 (1999)
Sandra Sue MESHELL, Plaintiff-Appellant,
v.
Horace J. LOVELL, et al., Defendants-Appellees.
No. 98-1192.
Court of Appeal of Louisiana, Third Circuit.
March 17, 1999.
Writ Denied June 4, 1999.
*84 Otis Edwin Dunahoe, Jr., for Secondary Plaintiff Sandra Sue Meshell, et al.
Tracy L. Oakley, Ruston, for Defendant/Appellee Horace J. Lovell, et al.
Bradley John Gadel, for Defendant/Appellant Agricultural Ins. Co.
Earl Pitre, Jr., Baton Rouge, for Defendant/Appellee State of La., DOTD.
Raymond L. Brown, Jr., Alexandria, for Defendant/Appellee New Hampshire Ins. Co.
BEFORE: COOKS, SAUNDERS and GREMILLION, Judges.
COOKS, Judge.
This matter arises out of an accident that occurred on July 23, 1996, at the intersection of U.S. Highway 171 and Topsey Bell Road, just north of Lake Charles, Louisiana. Sandra Sue Meshell was operating an eighteen-wheeler truck owned by TransAmerican Waste Industries. Meshell was employed by TransAmerican to drive two loads of garbage each day from Lake Charles to Many, Louisiana. Meshell traveled to Lake Charles, picked up a load, and dropped the load at the dump in Many and was returning to Lake Charles to pick up her second load. She was traveling in a southerly direction on U.S. 171, approaching the intersection of Topsey Bell Road. U.S. 171 curves to the right as it nears Topsey Bell Road from the north. On this date, there was road construction ongoing in this area. According to Meshell, as she approached the intersection she noticed a red pickup truck pulling off from the side road in front of her. Meshell attempted to stop but was unable to do so before her vehicle collided with the truck operated by Horace J. Lovell.
Prior to the accident, Lovell was traveling in a westerly direction on Topsey Bell Road. According to Lovell, he stopped at the intersection of Topsey Bell Road and U.S. 171. Lovell told the investigating officer he looked north and south for traffic, did not see any, and proceeded to turn left onto U.S. 171 when the collision occurred. He testified, his vehicle's rate of speed was approximately 10 to 15 miles per hour when the accident occurred.
Lovell had liability insurance with Safeway Insurance Company on his pickup truck with limits of $10,000.00 per person and $20,000.00 per accident. Meshell had her truck insured by Agricultural Insurance Company, with limits of $1,000,000.00. At the time of the accident, Meshell was engaged in the course and scope of her employment with TransAmerican Waste. Subsequently, she received workers' compensation benefits.
As a result of the accident, Meshell suffered injuries to her right shoulder and neck. Initially, she was treated by Dr. Garland Miller, who referred her to Dr. Gordon Mead, an orthopaedic surgeon. After a period of conservative treatment, Dr. Mead concluded Meshell required surgery on her right shoulder to relieve an impingement. Dr. Mead also found Meshell *85 had a cervical strain superimposed upon a degenerative cervical disc disease.
Meshell filed suit for personal injuries against Horace J. Lovell and his liability insurer, Safeway Insurance Company. In addition, she named as defendants the State of Louisiana, through the Department of Transportation and Development (DOTD) and the uninsured motorist insurer for her employer's truck, Agricultural Insurance Company. New Hampshire Insurance Company intervened to recover workers' compensation benefits paid to the plaintiff. The matter was tried before a jury.
On the morning of the trial, a stipulation was entered into by all counsel of record agreeing that New Hampshire Insurance Company (the workers' compensation carrier of TransAmerican) paid medical expenses to or on behalf of Sandra Meshell in the amount of $36,617.82 and indemnity benefits in the amount of $20,935.00. The parties also stipulated, at the time of the accident, Meshell was acting within the course and scope of her employment. All matters were submitted to the jury, except New Hampshire Insurance Company's workers' compensation subrogation claims. The jury rendered a verdict finding Lovell 75% at fault in causing the accident and Meshell 25% at fault. The jury found DOTD was not at fault. The jury awarded the following damages totaling $136,206.23:

A. Pain, Suffering, Mental and Physical $25,000.00
 Anguish
B. Past Medical Expenses $36,206.23
C. Past Lost Wages $32,000.00
D. Future Lost Wages and Earning $18,000.00
 Capacity
E. Loss of Fringe Benefits $ 0.00
F. Permanent Disability, Loss of $25,000.00
 Enjoyment of Life

The jury also found the failure of Agricultural Insurance Company to make an unconditional UM tender to the plaintiff was reasonable. The trial judge, ruled on New Hampshire's claims and found it had no right of recovery against Agricultural. The trial judge requested the parties prepare a judgment in accordance with the jury's verdict and his ruling. After all counsel were unable to concur on the judgment's content, Agricultural and Meshell submitted separate judgments for the court's consideration. The court signed the judgment submitted by Meshell. Agricultural filed a motion to have the judgment amended in conformance with the law and the jury verdict. Meshell filed a Motion for Judgment Notwithstanding the Verdict, contending the damage award was inadequate or, alternatively, urging the trial court to grant it a new trial. All motions were denied by the trial court. Both Meshell and Agricultural Insurance Company appealed the jury's verdict. Meshell asserted the following assignments of error:
1. The jury was manifestly erroneous in allocating 25% fault to her in the occurrence of this accident.
2. The jury committed manifest error in its award of $18,000.00 for future lost wages.
3. The jury committed manifest error in awarding general damages for pain, suffering and anguish and loss of enjoyment of life to a total of $50,000.00.
Agricultural contends that the jury's verdict is supported by the evidence, but that the judgment signed by the court is incorrect as a matter of law.

ALLOCATION OF FAULT
An appellate court may not set aside a trial court's findings of fact in the absence of clear or manifest error. Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse a trial court's factual determinations, a court of appeal must find, based on the record, that no reasonable factual basis for the findings exists and that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987). The issue which an appellate court should resolve is not whether the trier of fact was right or wrong, but whether the fact finder's *86 conclusion was a reasonable one. Lewis v. State, Through DOTD, supra; Stobart v. State, Through DOTD, supra.
The fact finder's choice between two conflicting permissible views of the evidence "cannot be" manifestly wrong. Stobart v. State, Through DOTD, supra. The duty of the fact finder is to evaluate the credibility when testimony is conflicting and to accept or reject any part of a witness' credibility. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95), 655 So.2d 309. Where the testimony conflicts, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review by the appellate court. Rosell v. ESCO, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Meshell argues she should not be apportioned any fault in causing the accident. In support of this argument, she relies strongly on the fact that she was traveling on a favored highway. She also asserts, as she approached the construction zone, she disengaged her cruise control (which she stated was set at 55 miles per hour) and slowed her vehicle.
Even though Meshell was traveling on a favored road she is not relieved of the duty to exercise ordinary care. When a superior motorist realizes that an inferior motorist will continue his approach and obstruct the superior motorist's passage across the intersection, she is guilty of negligence should she fail to take every precaution to avoid a collision. Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 (1960); Petersen v. State Farm Auto. Ins. Co., 543 So.2d 109 (La.App. 3 Cir.1989); Audubon Ins. Co. v. Knoten, 325 So.2d 624 (La.App. 4 Cir.1976).
The evidence established Meshell was driving unreasonably fast in a construction zone; and, after seeing Lovell enter her lane of travel she failed to apply her brakes, use her horn or take evasive action. The evidence, thus, supports the jury's finding that Meshell's actions, or lack thereof, contributed to the accident. The jury's decision to assign her 25% fault in causing the accident was not manifestly erroneous.

QUANTUM

I. General Damages
In reviewing general damage awards, an appellate court must accord much deference to the trial judge or jury. Andrus v. State Farm Mutual Automobile Insurance Company, 95-0801 (La.3/22/96), 670 So.2d 1206, 1210. The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Andrus, 670 So.2d at 1210; Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Because the discretion vested in the trier of fact is great, and even vast, an appellate court should only disturb an award of general damages if there is a clear abuse of that discretion. Andrus 670 So.2d at 1206; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Meshell was awarded $50,000.00 as general damages. This included pain and suffering, both mental and physical, permanent disability and loss of enjoyment of life. Meshell, in brief, compares the jury's award with that given in "similar cases," and concludes the award was inadequate in light of these decisions.
Meshell suffered from pre-existing conditions in her shoulder, neck, back and knee. The injury to her shoulder required surgery, which Dr. Gordon Mead performed. Dr. Mead testified the surgery cured her shoulder. However, Meshell developed adhesive capsulitis which required Dr. Mead to perform a manual manipulation of the shoulder. Dr. Mead testified Meshell's adhesive capsulitis developed in large part because of non-use of her shoulder and arm. He stated this condition extended Meshell's recovery period, and *87 forced the manipulation procedure. After a short period of physical therapy, Meshell regained 85-90% of the motion in her shoulder. The mobility in her shoulder eventually lessened because Meshell decided not to perform the exercises recommended by her physicians.
An accident victim has a duty to exercise reasonable diligence and ordinary care to minimize her damages after the injury has been inflicted. Jacobs v. New Orleans Public Service, Inc., 432 So.2d 843 (La.1983); Cobb v. Kleinpeter, 95-271 (La. App. 3 Cir. 10/4/95), 663 So.2d 236. The accident victim need not make extraordinary or impractical efforts, but must undertake those which would be pursued by a person of ordinary prudence under the circumstances. Id. The record reveals Meshell failed to minimize her damages, and it was within the jury's discretion to take this into account when rendering its damage award. After a thorough review of the record, the general damage award of $50,000.00 does not constitute a clear abuse of the jury's discretion.

II. Lost Wages
Meshell contends the jury erred in only awarding her $18,000.00 for future lost wages. An award for loss of earning capacity is inherently speculative and not always calculable with mathematical certainty. It is subject to the discretion of the factfinder. Robert v. Albarado, 509 So.2d 575 (La.App. 3 Cir.1987); Morris v. State Department of Transportation, 94-2545 (La.App. 1 Cir. 10/6/95), 664 So.2d 1192, writ denied, 95-2982 (La.2/9/96), 667 So.2d 537; Coffin v. Board of Sup'rs of Louisiana State University Agr. and Mechanical College, 620 So.2d 1354 (La.App. 2 Cir.1993). An award for loss of earning capacity is not predicated merely upon the difference between a person's earnings before and after a disabling accident, but also encompasses loss of a person's earning capacity, the loss or reduction of a person's capacity to do what he or she is equipped by nature, training and experience to do, and for which he may receive recompense. Folse v. Fakouri, 371 So.2d 1120 (La.1979); Wactor v. Pickens Lumber Co., 505 So.2d 815 (La.App. 2 Cir.), writ denied, 508 So.2d 877 (La.1987).
Defendants point out Dr. Mead found Meshell's knee severely arthritic; and, he discussed knee replacement surgery with her. Dr. Galloway testified, because of her knee problems, he would have recommended to her as early as 1986 that she not drive an eighteen wheeler. Previously, Meshell complained of chronic back pain that was aggravated by her duties as a truck driver. The record also revealed Meshell always worked with her husband. Even though she drove a separate truck for TransAmerican, she worked the same hours and drove the same route. A few months after the accident, Meshell's husband died. Defendants argue considering the disparity between the award granted by the jury and the amount Meshell's economist recommended, it is obvious the jury inferred from the evidence that Meshell would not have continued driving trucks considering her sporadic work history, her health, and the death of her husband.
Though Meshell experienced prior knee and back problems, she drove trucks for years before the accident. The fact that she actually performed her job duties before the accident negates a finding that she suffered from a disability so debilitating that she could not work at all. The jurisprudence affords her a presumption of a causal connection between the accident and her subsequent inability to continue performing the same tasks. See Buras v. Petroleum Helicopters, Inc., 95-1629 (La. App. 4 Cir. 12/17/97), 705 So.2d 766, and Stevenson v. Bolton Co., Inc., 484 So.2d 678 (La.App. 1 Cir.1985). Meshell testified she would have continued to drive trucks, and any inference that she would have stopped driving because of her husband's death is mere speculation and not supported by the record.
*88 Both Dr. Mead and Dr. Galloway felt Meshell no longer possessed the ability to perform her job as a truck driver. They testified a possibility exists that Meshell could return to some form of minimum wage employment. Defendant's vocational expert, Mrs. Helen Carroll, testified she made a preliminary job search of 29 employers in Sabine Parish and was unable to find a full-time job opening, and only one part-time job which paid minimum wage.
The jury, as evidenced by its award for past lost wages, accepted that Meshell's pre-accident earning capacity was $500.00 per week. However, in rendering an award for future lost wages, the jury apparently disregarded this figure. Dr. Randy Rice, plaintiff's economist, testified Meshell possessed a remaining work life of 6.21 years from the date of trial. Based upon her current earnings of $25,000.00 per year, he calculated her gross future loss of earnings, factoring in inflation and other pertinent factors, equaled $149,080.00. Alternatively, assuming Meshell could only return to some lesser type of employment, Dr. Rice calculated her gross future loss of earnings (subtracting the amount she could earn at minimum wage) will equal $83,485.00. Dr. Rice also testified under either scenario, Meshell was entitled to lost future fringe benefits of $8,582.00.
After a thorough review of the record, we conclude that the jury abused its discretion in awarding Meshell only $18,000 for future lost wages. The lowest reasonable amount the jury could have awarded in this case is $92,067.00. This figure represents Meshell's loss of earnings and fringe benefits minus what she could earn by returning to minimum wage employment. Accordingly, we amend the judgment to include an award of $92,067.00 for future lost wages and fringe benefits.

JUDGMENT FORM
Agricultural Insurance Company also appealed contending the judgment signed by the trial court does not conform to the findings of the jury and is incorrect as a matter of law. At the close of trial, after accepting post-trial memoranda by counsel, the trial judge denied New Hampshire Insurance Company's subrogation claim against Agricultural for worker's compensation reimbursement. The court held the policy exclusion found in the uninsured motorist policy precluded such recovery as held by the Supreme Court in Travelers Ins. Co. v. Joseph, 95-200 (La.6/30/95), 656 So.2d 1000.
Agricultural argues the trial court correctly denied New Hampshire's subrogation claim for workers' compensation benefits against it, but the court signed a judgment allowing Meshell to collect the very same benefits from all defendants. Agricultural contends this is an error made by the trial court which must be corrected on appeal. We disagree.
The issue in Travelers was "whether an employer's UM policy exclusion may prevent a workers compensation insurer from recovering compensation benefits paid to the UM policyholder's employee injured by an uninsured/underinsured motorist." Travelers, 656 So.2d at 1003. Relying on the individual's right to contract on all matters not forbidden by law, the supreme court held "no statute prohibits an employer from contracting with its UM insurer to exclude compensation reimbursement." Travelers, 656 So.2d at 1004.
Travelers dealt with the relationship between the uninsured motorist insurer and the workers' compensation insurer. It does not deal with an injured plaintiff's right to recover against an uninsured motorist carrier. This court in Watson v. Funderburk, 98-618, 720 So.2d 808 (La. App. 3 Cir. 10/28/98) writ denied, 98-2961 (La.1/29/99), ___ So.2d ___, 1999 WL 51710 and the Fourth Circuit in Cleaning Specialists, Inc. v. Johnson, 96-2677 (La. App. 4 Cir. 5/21/97), 695 So.2d 562, writ denied, 97-1687 (La.10/3/97), 701 So.2d 210, have addressed this issue, and held compensation carriers are not entitled to *89 any credit and/or reimbursement against the uninsured motorist carrier. There was no error in the judgment signed by the trial court.

PENDING MOTION FILED ON APPEAL
On the day of oral argument, a Motion to Substitute Parties was filed with this court noting that Meshell and New Hampshire settled and compromised the workers' compensation claim. As a component of the settlement, the parties agreed: "a settlement has been entered with the workers' compensation carrier which assigns Mrs. Meshell the right to recover any and all sums encompassed within the workers' compensation lien/intervention in this matter." The motion was taken under advisement and the parties were allowed to file supplemental briefs on the matter. Counsel for Agricultural informed this court it did not desire to file a brief, because it did not feel the Motion to Substitute impacted any of their substantive rights. Counsel for Meshell agreed that the motion does not affect any substantive rights of Agricultural. Therefore, the Motion to Substitute is granted.

DECREE
For the foregoing reasons, the judgment of the trial court is amended to award Sandra Sue Meshell $92,067.00 for future lost wages. In all other respects the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant, Agricultural Insurance Company.
AFFIRMED, AS AMENDED.