NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1083

ELEANOR GREMILLION

VERSUS

BELLSOUTH TELECOMMUNICATIONS, INC.
D/B/A AT&T LOUISIANA

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2010-6028
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

AFFIRMED.

Jerold Edward Knoll
The Knoll Law Firm
P. O. Box 426
Marksville, LA 71351
(318) 253-6200
COUNSEL FOR PLAINTIFF-APPELLEE:
    Eleanor Gremillion

James F. Perot Jr.
Attorney at Law
365 Canal St., Room 3060
New Orleans, LA 70130-1102
(504) 528-2054
COUNSEL FOR DEFENDANT-APPELLANT:
    Bellsouth Telecommunications, Inc.

**PICKETT, Judge.**

Bellsouth Communications, Inc., d/b/a AT&T Louisiana (AT&T) appeals the judgment of the trial court finding AT&T committed willful misconduct in suspending Eleanor Gremillion's phone service for one day and awarding Ms. Gremillion $30,000.00.

## STATEMENT OF THE CASE

When Ms. Gremillion, an eighty-seven-year-old resident of Avoyelles Parish and an active member in the community, received her phone bill from AT&T in April 2010, she discovered a charge of $74.00 for Dish Network services. As Ms. Gremillion had neither requested nor received Dish Network satellite television services, she called AT&T to cancel the charges. She paid the current charges for telephone services. For the next two months, there were additional monthly charges for Dish Network. Ms. Gremillion continued to pay the charges for telephone services but did not pay the amounts attributable to Dish Network. On July 6, 2010, Ms. Gremillion's niece, Laura Calaco, initiated a phone call that resulted in a three-way call with representatives of Dish Network and AT&T. They were able to discover that Ms. Gremillion was incorrectly being billed by AT&T, as the billing agent for Dish Network, for services to an actual Dish Network customer with a similar telephone number. Satisfied that AT&T was now aware of the mistake, Ms. Gremillion was aggravated to see the Dish Network charges for three months plus late charges on her next bill. Ms. Calaco called Dish Network again, in an attempt to have the charges removed. Their efforts were not successful, as the Dish Network charges appeared on Ms. Gremillion's AT&T bills in August, September, and October. Each month, Ms. Gremillion paid the current charges for her AT&T telephone service but not the outstanding Dish Network charges ($257.65 for three months plus late charges). In July, Ms. Gremillion

began to get additional monthly notices threatening to discontinue her telephone service if she failed to pay her balance in full. At some point Ms. Gremillion contacted a lawyer, who sent a letter to AT&T on September 22, 2010, pledging to file suit if her service was ever disconnected.

When Ms. Gremillion received her AT&T bill dated October 25, 2010, it included current charges of $84.05, delinquent charges of $274.20, and a late payment charge of $2.86. The total amount was due on November 14. On November 16, AT&T sent a "Service Interruption Notice" to Ms. Gremillion explaining that a payment of $76.50 had to be received by November 23 to avoid service interruption. Ms. Gremillion sent a check to AT&T on November 22. Her attorney sent a letter to AT&T explaining the situation again and threatening suit if service was terminated. According to the representative of AT&T who testified at trial, the check was likely received by AT&T at its payment processing center in Georgia by November 27, but it was not immediately processed. Because the account was not shown as paid by November 29, Ms. Gremillion's phone service was terminated sometime on the morning of November 30. Her payment was processed on that same date, and her service resumed by 5:30 p.m. on November 30.

This suit was filed the next day, on December 1, 2010. AT&T argued it was not liable to Ms. Gremillion, but if it were found liable, a General Subscriber Services Tariff (GSST) governed this dispute and limited its liability. Following a bench trial, the trial court found that the GSST was not applicable because of AT&T's willful misconduct. The trial court awarded $30,000.00 in general damages for Ms. Gremillion's emotional distress, including anxiety, embarrassment, and inconvenience. AT&T now appeals.

## ASSIGNMENTS OF ERROR

AT&T asserts six assignments of error:

1.    The trial court erred in finding that AT&T breached a duty owed to plaintiff.

2.    The trial court erred in finding that AT&T had engaged in willful misconduct.

3.    The trial court erred in awarding damages for negligent infliction of emotional distress.

4.    The trial court erred in awarding plaintiff $30,000.00 in general damages.

5.    The trial court erred in its failure to find comparative negligence on the part of plaintiff.

6.    The trail court erred in its failure to allocate any liability to Dish Network.

## DISCUSSION

In *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989), the supreme court explained the appropriate standard of review when a court's findings of fact are the subject of an appeal:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

In its first assignment of error, AT&T argues that the GSST, by which the Louisiana Public Service Commission regulates AT&T's activities in the state, authorized AT&T to cut off Ms. Gremillion's phone service. In its second assignment of error, AT&T argues the trial court erred in finding that AT&T engaged in willful misconduct. Because these assignments are interrelated, we will discuss them together.

Ms. Gremillion's October AT&T bill was dated October 25, 2010. The amount due was considered delinquent if not paid within twenty days of the date of the bill, in this case November 14, 2010. According to the GSST, the provider was allowed to suspend or terminate service without notice for "[n]onpayment of any delinquent sum due for exchange, long distance, or other services." Ms. Gremillion did not send payment to AT&T until at least November 16, 2010 (the date on the check). The payment was received by AT&T, according to its representative who testified at the trial, by November 27, 2010. However, the automated system did not process payment until November 30, 2010, by which time Ms. Gremillion's service had already been suspended.

The trial court found that the terms of the GSST were not applicable because Ms. Gremillion proved that AT&T had engaged in willful misconduct. Under the terms of the GSST, any limits of liability in the GSST are inapplicable upon a finding of willful misconduct by AT&T.

Essentially, the evidence showed that Ms. Gremillion's service would not have been interrupted in November if the Dish Network charges had properly been removed from her bill. The only reason her service was interrupted was because AT&T, despite knowing that Ms. Gremillion did not owe Dish Network any money in July, continued to bill her for those services. They continued to bill her for those services after receiving a letter from Ms. Gremillion's attorney in September. While we acknowledge that AT&T is a large company with complicated billing procedures, it does not excuse them from harassing customers who owe them no money after having been made aware that the billing is incorrect. We find the trial court did not commit manifest error in its finding that AT&T owed a duty to Ms. Gremillion and that AT&T engaged in willful misconduct.

4

Likewise, we find no error in the trial court's ruling that AT&T's conduct is so egregious as to support a cause of action for negligent infliction of emotional distress. Ms. Gremillion testified that AT&T's harassing letters and ultimately the suspension of her phone service caused her anxiety, embarrassment, humiliation, and inconvenience. The uncontradicted evidence was that Ms. Gremillion never paid her bills late, and the dun letters she received even after AT&T knew she did not owe for Dish Network services were a source of anxiety. On the day AT&T cut off her phone service, at least two people she saw told her that her phone service had been interrupted, causing embarrassment and humiliation. She also missed time-sensitive calls from an organization in which she has an important leadership role.

The supreme court has explained that in order to recover for mental anguish, without a showing of physical harm or injury, caused by another party's negligence, a plaintiff must show "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi v. State, through the Dep't of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La.1990). Taking into account Ms. Gremillion's advanced age, that her telephone was her only means of communication, and that AT&T persisted in billing her for seven months after it knew she did not owe the bill for Dish Network services, we find the trial court did not err in finding the conduct of AT&T so extreme and outrageous that it rose to the level necessary to support an award of negligent infliction of emotional distress.

In its fourth assignment of error, AT&T argues that the award of $30,000.00 was an abuse of discretion. We accord great weight to the trial court's findings when reviewing a general damage award, and we will not disturb those findings absent a showing of clear abuse of discretion. *Andrus v. State Farm Mut. Auto.*

5

*Ins. Co.*, 95-0801 (La. 3/22/96), 670 So.2d 1206. We must determine whether the trial court's award "is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances" before we may adjust the award. *Id.* at 1210. We find no abuse of discretion in the amount awarded by the trial court and it will not be disturbed.

We find no merit in AT&T's contention that Ms. Gremillion's damages should be reduced because of her comparative fault. The evidence supports the finding that Ms. Gremillion did nothing but inform AT&T of the problem with the billing immediately and continue to pay the actual amount due timely. Furthermore, the fact that she paid one bill late is not what caused her service to be suspended. Rather, the incorrect charges from Dish Network caused her slight delay in payment to result in interruption of her phone service.

Finally, we reject the contention that Dish Network should be apportioned some fault. The evidence shows that AT&T was made aware of the billing problem in July when Ms. Calaco talked to representatives of Dish Network and AT&T. AT&T nevertheless continued to bill Ms. Gremillion for services she did not receive.

## CONCLUSION

The judgment of the trial court is affirmed in all respects. All costs of this appeal are assessed to the defendant, Bellsouth Telecommunications, Inc., d/b/a AT&T Louisiana.

**AFFIRMED.**