|, SULLIVAN, Judge.
This is a medical malpractice case. Ms. Fay L. Bridgers filed suit against Dr. Fay-ez Shamieh, Dr. Fayez Shamieh, A Professional Medical Corporation (FSPMC), Dr. Donald H. Vines, Dr. Jeffery Lavoy, Dr. Earl R. Stagg, and the Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital (Memorial Hospital) for failing to timely diagnose Guillain-Barré Syndrome (GBS) depriving her of a chance of recovering from the disease. Her husband, Mr. James H. Bridgers, filed a claim for a loss of consortium. Dr. Vines and his insurer, St. Paul Fire & Marine Insurance Company (St. Paul), paid $100,000.00 and settled with the Bridgers. The Bridgers dismissed the remaining defendants, then proceeded against | Rthe Louisiana Patient’s Compensation Fund (LPCF) for damages in excess of $100,000.00. The jury awarded total damages of $4,240,539.55.[1] The LPCF appeals. We affirm.
*733 FACTS
Ms. Bridgers checked into Lake Charles Memorial Hospital on January 8, 1991, complaining of abdominal pain, generalized weakness, a lightheaded feeling, failing ability to ambulate, and persistent numbness in her right hand and lower extremities. Dr. Lavoy initially treated her. When tests suggested chronic gall bladder disease requiring surgery, Dr. Lavoy consulted with Dr. Vines. Dr. Vines performed a cholecystectomy on January 11, 1991, without complications. However, on January 12, 1991, while in recovery, Ms. Bridgers went into ventricular tachycardia and ventricular fibrillation, progressing to cardiac arrest. She responded to life support measures and was transferred to the intensive care unit where she experienced a similar episode. Dr. Lavoy subsequently requested a neurological consult. Dr. Shamieh examined Ms. Bridgers on January 14, 1991, and made a provisional diagnosis of GBS, a rare neurological disease. That diagnosis was confirmed the following day, and Dr. Shamieh commenced steroid treatment.
Ms. Bridgers did not respond well to treatment. Currently, she has lost the use of her arms and legs and is confined to a wheelchair for the remainder of her life. Also, she suffers from depression and has trouble communicating.
Prior to filing suit against the defendants, Mr. and Ms. Bridgers presented their claim to a medical review panel as required by La.R.S. 40:1299.47. The panel convened and rendered an opinion that none of the defendants were negligent in their ^treatment of Ms. Bridgers. On August 17, 1994, the Bridgers filed this suit to recover damages resulting from the untimely diagnosis and institution of treatment of GBS. The central contention is that Dr. Vines’ failure to timely request a neurological consult deprived Ms. Bridgers of an early diagnosis of GBS and an eighty-five percent chance of recovery from the disease. Ms. Bridgers also claimed that the surgery performed by Dr. Vines was unnecessary and harmful. She claimed that it aggravated her condition and made her so unstable that one treatment option, which would have given her a higher chance of recovery, became unvia-ble. Mr. Bridgers claimed a loss of consortium.
On November 26, 1997, the trial court approved a settlement between the Bridg-ers and Dr. Vines and St. Paul, his insurer. St. Paul tendered $100,000.00 on behalf of Dr. Vines. Mr. and Ms. Bridgers then dismissed with prejudice their claims against the other defendants and reserved their right to pursue an action against the LPCF for any damages in excess of the settlement amount.
The Bridgers filed a number of pretrial motions, including motions to exclude the testimony of various expert witnesses, as well as the opinion of the medical review panel, and a motion to strike the defendant’s affirmative defense of third party fault. Following an evidentiary hearing, the motions were granted, in part, and denied, in part. The trial court held that all evidence regarding liability vel non and third party fault was inadmissible and irrelevant because liability was established by the settlement. The trial court further held that the only remaining issue to be decided was whether there was a causal relationship between the admitted malpractice of Dr. Vines and Ms. Bridgers’ condition and, assuming there was, whether she was entitled to recover damages in excess of $100,000.00. Lastly, the trial court held that |4to the extent that any of the evidence sought to be admitted by the LPCF related to causation and damages, it would be subject to a hearing on admissibility to be heard out of the jury’s presence.
The case was tried before a jury November 2-5, 1998. The jury returned a unanimous verdict in favor of Mr. and Ms. Bridgers and against the LPCF. It found *734 that, as a result of Dr. Vines’ malpractice, Ms. Bridgers had been deprived of a seventy-five percent chance of recovery from GBS, and awarded her $767,500.00 in general damages, $666,704.55 in past medical expenses, and $2,693,835.00 in future medical expenses and related benefits. The jury awarded Mr. Bridgers $112,000.00 for loss of consortium. The LPCF appeals, assigning seven errors. The assigned errors can be grouped into two categories: 1) the exclusion of evidence by the trial court; and 2) causation and damages.
LAW AND DISCUSSION

Excluded Evidence

All of the LPCF’s assignments of error regarding the exclusion of evidence arise from the pre-trial evidentiary rulings made by the trial court. The LPCF argues that the rulings were erroneous. Specifically, it argues that the medical review panel opinion, the testimony of the medical review panel members, Drs. Gerald Mouton, Joseph O’Donnell and Stephen Snatic, and the testimony of Drs. Charles Knight, Richard Matis, David Morrill, Charles White, Fayez Shamieh, Yadolla Harati, and Randolph Evans were wrongfully excluded from evidence.
The only evidence presented by the LPCF at trial was the testimony of Drs. Shamieh and Evans. At the conclusion of the trial, the LPCF offered a written proffer which included the medical review panel opinion, the deposition testimony 1 ¡¡of the medical review panel members, and the deposition testimony of Drs. Harati, Knight, Evans, and Dr. Stephen Zuckerman, the Bridgers’ expert. It argues that the proffered evidence was admissible because it was relevant to third party fault and/or causation and/or was admissible pursuant to La.R.S. 40:1299.47(H). La.R.S. 40:1299.47(H) provides that the medical review panel opinion “shall be admissible” at trial and that either party has the right to call the members of the medical review panel to testify at trial.
The LPCF also argues that the testimony of Drs. Shamieh, Snatic, Harati, and Evans, all neurologists, was relevant to causation and third party fault. It claims that the trial court struck Drs. Snatic and Harati as witnesses, determining that their testimony would be cumulative. This is not correct. The trial court ruled that a determination as to whether the testimony of the four neurologists was cumulative would be made at the time the LPCF sought to introduce their testimony. Drs. Shamieh and Evans testified at the trial. Their testimony was limited to the issue of causation as per the ruling of the trial court. The LPCF did not call either Dr. Snatic or Dr. Harati as a witness during the trial. Therefore, the issue of whether their testimony was cumulative was never addressed by the court. Accordingly, the assignment of error as to the testimony of these doctors on the issue of cumulation is without merit. The issue of third party fault is addressed below.
In making the rulings on the admissibility of evidence on the issues of liability, the trial court considered the overall scheme of the Medical Malpractice Act, including La.R.S. 40:1299.44(C)(5), and the recent fine of jurisprudence on this issue ending with Graham v. Willis-Knighton Medical Center, 97-188 (La. 9/9/97); 699 So.2d 365.
La.R.S. 40:1299.44(C)(5) provides, in part:
In approving a settlement or determining the amount, if any, to be paid from the patient’s compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
In Stuka v. Fleming, 561 So.2d 1371(La.), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990), the LPCF contested its liability to the plaintiff who had compromised his malpractice claim against one health care provider for *735 $100,000.00, then dismissed the other defendants and sued the fund to recover damages in excess of the $100,000.00 settlement. The court concluded that the only issue to be litigated against the LPCF was the amount of damages sustained by the plaintiff as a result of the admitted malpractice. In reaching this conclusion, the court recognized the impact of its conclusion on the LPCF, stating:
We recognize that this literal interpretation of the statute affords less rights to the Fund when claims against multiple health care providers are settled than when such claims are tried. In the case of a trial the Fund has the opportunity for reduced exposure when more than one health care provider is determined to be liable. But in the case of a settlement with one health care provider for $100,000 the Fund does not have this opportunity in the subsequent litigation with the victim. However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund’s affirmative right to litigate liability on the part of any other named or unnamed health care providers.
Id. at 1374.
In Graham, 699 So.2d at 368 (citations omitted), the supreme court reached the same conclusion, noting that in Stuka:
This court rejected the Fund’s contention that it could still litigate the issue of liability because a payment of $100,000 had not been made on behalf of each named health care provider. Interpreting the overall statute as dispensing entirely with the litigation of liability between the victim and the Fund after one health care provider has paid $100,000 in 17settlement, this court held that once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission, and “the only issue thereafter between the victim and the Fund is the amount of damages sustained by the victim as a result of the admitted malpractice.”
The trial court concluded that since proof of liability and damages of at least $100,000.00 was established by Dr. Vines’ settlement with the Bridgers, any evidence addressing the issue of liability, whether it be the liability of Dr. Vines or the liability of others, was irrelevant and inadmissible. At the same time, the trial court recognized that the burden of proof remained with the Bridgers on the issues of causation and damages in excess of $100,000.00. Its rulings specifically provided for the admissibility of any evidence produced by the LPCF that addressed causation and damages. The only requisite for the admission of such evidence was that a hearing be held for the trial court to determine whether the evidence sought to be introduced were relevant to causation and/or damages. With these rulings, the trial court' gave Dr. Vines’ admission of liability the effect mandated by Stuka and Graham, while requiring the Bridgers to prove causation and damages and allowing the LPCF the opportunity to rebut their evidence on these issues.
The trial court is vested with vast discretion in connection with the admissibility of evidence. It will not be reversed absent an abuse of that discretion. Maddox v. Omni Drilling Corp., 96-1673 (La.App. 3 Cir. 8/6/97); 698 So.2d 1022, writ denied, 97-2766 (La.1/30/98); 709 So.2d 706.
We find no error with these rulings, including their application to the medical review panel opinion and the panel members’ testimony. The trial court prohibited the LPCF’s introduction of the opinion and the testimony of the panel members on the issue of liability only. If the opinion and panel member testimony were relevant to the issues of causation and damages, the LPCF could have requested a hearing for |«a determination of their admissibility. To the extent that they addressed the issue of liability only, *736 they were irrelevant under Stuka, 561 So.2d 1371, and Graham, 699 So.2d 365. Furthermore, they would have been confusing to the jury, who had already been instructed that Dr. Vines had admitted liability. We find no abuse of discretion by the trial court with respect to the medical review panel opinion and panel member testimony.
At trial, the LPCF introduced the testimony of Drs. Shamieh and Evans. It did not attempt to introduce any other evidence. Rather, it submitted the medical review panel opinion, the deposition testimony of the medical review panel members, and the deposition testimony of five other physicians by way of a written proffer.
The purpose of a proffer is to preserve evidence excluded by the trial court so that the evidence is available for appellate review. McLean v. Hunter, 495 So.2d 1298 (La.1986). The LCPF did not attempt to introduce the proffered evidence at trial, so there was no ruling by the trial court excluding the specific evidence included in the proffer. Therefore, the proffer was technically improper. However, the trial court allowed the proffer to be filed into the record for appellate review. Accordingly, the LPCF cannot complain that the proffer was not allowed.
In light of our finding that the trial court’s evidentiary rulings were correct, we have not considered the evidence contained in the proffer. The LPCF did not attempt to introduce the proffered evidence at trial. It cannot now claim that the evidence was admissible on the issues of causation and damages in order to obtain a review of the proffered evidence by this court. These assignments of error are without merit.

Causation and Damages

The manifest error-clearly wrong standard of review applies to appellate review of a jury’s factual findings. We may not set aside this jury’s findings of fact unless 1 flthe findings were manifestly erroneous or clearly wrong. This requires reviewing the record in its entirety and determining that there is no factual basis for the findings and that the findings are unreasonable. Evans v. Tudor Construction, 95-1029 (La.App. 3 Cir. 1/31/96); 670 So.2d 447.
In its first assignment of error, the LPCF states that the Bridgers have the burden of proving causation and that the jury erred in finding that the admitted malpractice of Dr. Vines deprived Ms. Bridgers of a seventy-five percent chance of recovery from GBS. We interpret this assignment to be a complaint that the Bridgers failed to carry their burden of proof on the issue of causation. In its last assignment of error, the LPCF argues that the Bridgers failed to prove damages in excess of $100,000.00.
Dr. Stephen Zuckerman, a physician certified in neurology and internal medicine, opined that Dr. Vines’ malpractice deprived Ms. Bridgers of an eighty-five percent chance of recovery. Specifically, Dr. Zuckerman testified that the surgery performed by Dr. Vines was unnecessary and improper. In his opinion, Ms. Bridg-ers would have been in better shape to recover from GBS if Dr. Vines had not performed the surgery.
Testifying for the LPCF, Dr. Shamieh, who had failed the board certification for neurology twice, and who was still not board certified at the time of trial, testified that he could not rule out that Dr. Vines’ admitted malpractice deprived Ms. Bridg-ers of up to a forty percent chance of recovery. Likewise, Dr. Evans, another neurologist for the LPCF, testified that he also could not rule out that the admitted malpractice deprived Ms. Bridgers of up to a forty percent chance of recovery.
On the issue of causation, the jury had two alternative views of the evidence and found that Dr. Vines’ admitted malpractice deprived Ms. Bridgers of a seventyjfivem percent chance of recovery and that she sustained damages in excess of $100,- *737 000.00. Having reviewed the entire record, we find no manifest error with this finding. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The LPCF contends that the jury awarded excessive damages to the Bridgers. In Meshell v. Lovell, 98-1192, pp. 5-6 (La.App. 3 Cir. 3/17/99); 732 So.2d 83, 86, we stated:
In reviewing general damage awards, an appellate court must accord much deference to the trial judge or jury. Andrus v. State Farm Mutual Automobile Insurance Company, 95-0801 (La.3/22/96); 670 So.2d 1206, 1210. The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Andrus, 670 So.2d at 1210; Reck v. Stevens, 373 So.2d 498, 501(La.1979). Because the discretion vested in the trier of fact is great, and even vast, an appellate court should only disturb an award of general damages if there is a clear abuse of that discretion. Andrus, 670 So.2d at 1206; Youn v. Maritime Overseas Corp., 623 So.2d 1257(La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The parties stipulated to the authenticity of the past medical expenses which totaled $666,704.55; however, the LPCF contested causation. The LPCF argues the jury’s award of $666,704.55 was tainted by the trial court’s erroneous exclusion of evidence on causation. For the reasons previously stated, we find no error by the trial court and, consequently, no error with the jury’s award. The jury awarded $2,693,835.00 for future medical expenses. This award was based upon the testimony of an expert in the field of vocational rehabilitation, who had prepared a Life Care Plan for Ms. Bridgers and the testimony of an expert witness economist, who identified the high and low ranges for the future medical expenses as being between $3,240,303.00 and $2,147,367.00. The jury awarded $767,500.00 in general damages to Ms. Bridgers, who has lost the use of her arms and legs and will be hiconfined to a wheelchair for the rest of her life. The jury awarded $112,000.00 to Mr. Bridgers for a loss of consortium. We find no abuse of discretion by the jury.
These assignments of error are without merit.
DECREE
Finding no merit to any of the LPCF’s assignments of error, the jury’s verdict and the trial court’s rulings are affirmed. The LPCF is cast with all costs of this appeal.
AFFIRMED.

. The jury's verdict was reduced to judgment which subjected the general damage award to *733 the limitation contained in La.R.S. 40:1299.42(b)(1).