767 So.2d 102 (2000)
Kirk and Dianna McPHERSON, et al.
v.
LAKE AREA MEDICAL CENTER, et al.
No. 99-1876.
Court of Appeal of Louisiana, Third Circuit.
May 24, 2000.
Writ Denied September 29, 2000.
Todd Soileau Guilliot, St. Pe' & Soileau, Lafayette, LA, Counsel for Plaintiffs/Appellees/Kirk & Dianna McPherson.
Milo Nickel, M. Keith Prudhomme, Woodley, Williams, Boudreau, Norman, Brown & Doyle, Lake Charles, LA, Counsel for Defendant/Appellant/Louisiana Patients' *103 Compensation Fund on Behalf of Dr. Ronald M. Lewis.
Court composed of NED E. DOUCET, Jr., Chief Judge, SYLVIA R. COOKS and MARC T. AMY, Judges.
DOUCET, Chief Judge.
Defendant, the Louisiana Patients' Compensation Fund (LPCF), appeals a judgment of the trial court, pursuant to a jury verdict, awarding Plaintiffs $322,979.00 (subject to a credit of $100,000.00) in damages in connection with Plaintiffs' medical malpractice action. We affirm the judgment of the trial court.

FACTS
We extract the basic facts of the case from a prior opinion of this court, McPherson v. Lake Area Medical Center, 99-977, p. 1 (La.App. 3 Cir. 12/29/99); 755 So.2d 972, 973 (footnotes omitted), wherein we recounted the following:
On February 7, 1995, Kirk McPherson underwent a lumbar laminectomy with discectomy at the Lake Area Medical Center in Lake Charles, Louisiana. During the surgery, Mr. McPherson sustained a left retinal arterial occlusion resulting in the permanent loss of vision in his left eye. Thereafter, Mr. McPherson and his wife, Dianna, filed this medical malpractice action individually and on behalf of their two minor children to recover damages suffered as a result of Mr. McPherson's loss of vision. The McPhersons named several defendants in their original petition, including Dr. Ronald M. Lewis, the anesthesiologist for the surgery, and Galen-Med, Inc. The McPhersons alleged that upon awakening from the anesthesia, Mr. McPherson noticed problems with pain and loss of vision in his left eye. They alleged, among other things, negligence in the failure to properly pack and cover Mr. McPherson's eyes during the surgery, to appropriately monitor him while he was under anesthesia, to adequately adjust him during the surgery, and to render proper assistance and care in the postoperative room.
During the pending litigation, the McPhersons and Dr. Lewis entered into a compromise settlement pursuant to La.R.S. 40:1299.44 wherein Dr. Lewis admitted liability and paid the McPhersons $100,000.00. Pursuant to that statute, the trial court approved the settlement and dismissed the McPhersons' claims against Dr. Lewis and Galen-Med, Inc. The PCF was added as a defendant for excess damages.
In case number 99-977, we reversed the trial court's granting of a motion for summary judgment and remanded the case for further proceedings.
Prior to a jury trial on the matter of excess damages, Plaintiffs filed Motions in Limine seeking to have the following testimony excluded: (1) that of the members of the medical review panel, (2) that of Dr. Elmer Kline, an anesthesiologist, (3) that of Drs. Craig Smith and Jonathan Caulkwood, both neuro-ophthalmologists. Plaintiffs also sought to have the opinion of the Medical Review Panel excluded. The trial court granted Plaintiffs' motions finding that the opinion of the Medical Review Panel and the testimony sought to be excluded would go to liability, an issue which was admitted by Dr. Lewis' settlement. LPCF sought writs to this court on the trial court's ruling. In an unpublished opinion, this court found as follows:
This Court finds that the trial court properly denied the introduction of the Medical Review Panel Opinion and the testimony of the panelists themselves. This evidence would speak only to liability, which has been admitted through the earlier settlement agreement and may not be reargued.
The trial court erred, however, in excluding the expert neuro-ophthalmologists sought to be introduced by the defendant-applicant. The trial court's ruling is reversed concerning the use of these experts. They shall be allowed to testify as long as their testimony is *104 limited to the question of whether or not the health care provider's admitted malpractice resulted in damages in excess of $100,000.00.

The summary judgment granted by the trial court was designated as a final judgment. An immediate appeal is available. As such, this Court declines to exercise its supervisory jurisdiction.
McPherson v. Lake Area Medical Center, 99-585 (La.App. 3 Cir. 5/24/99), writ denied, 99-1619 (La.6/11/99), 745 So.2d 14 (emphasis added).
The case proceeded to trial by a jury, which found that the breach of the applicable standard of care by Dr. Lewis resulted in damages in excess of $100,000.00. The jury awarded Plaintiffs the following damages:

1)To Kirk McPherson:
Physical Pain and Suffering
 (past, present and future) $100,000.00
Mental Pain and Suffering
 (past, present and future) $100,000.00
Loss of Enjoyment of Life $ 25,000.00
Medical Expenses (past) $ 2 ,479.00
Medical Expenses (future) $ 25,000.00
Permanent Disability $ 50,000.00

2) To Dianna McPherson: a total of $15,000.00 for mental anguish and loss of consortium.
3) To the McPherson children: a total of $5,500.00 for loss of consortium.
The LPCF appeals assigning the following as errors:
1. The trial court erred in excluding the opinion of the medical review panel from evidence.
2. The trial court erred in excluding the testimony of the medical review panelists.
3. The trial court erred in excluding the testimony of the defendant's neuro-ophthalmologist, Dr. Craig Smith.
4. The jury erred in finding causation of damages in excess of $100,000.00.
5. Alternatively, the amount of damages awarded was excessive.

LAW AND DISCUSSION
In its first three assignments of error, LPCF asks us to re-visit issues we previously considered in our ruling of May 24, 1999, in Appellant's writ application. In Burkett v. UDS Management Corp., 99-82, pp. 4-5 (La.App. 3 Cir. 6/2/99); 741 So.2d 838, 841, writ denied, 99-1970 (La.10/15/99); 748 So.2d 1150, this court reviewed the law applicable to the law of the case doctrine stating the following:
The supreme court has defined the doctrine of the law of the case as follows:
The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case.

Petition of Sewerage & Water Bd. of New Orleans, 278 So.2d 81, 83 (La.1973). This court has further explained the law of the case doctrine as follows:
The law of the case doctrine "recognizes the binding force of trial court rulings during later stages of the trial..." Pitre v. Louisiana Tech University, 26,388, p. 1 (La.App. 2 Cir. 5/10/95); 655 So.2d 659, 664, writs granted, 95-1466, 95-1487 (La.10/6/95), 661 So.2d 454, reversed on merits, 95-1466, 95-1487 (La.5/10/96), 673 So.2d 585; see also Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). The reasons for this doctrine are: (1) avoidance of indefinite litigations; (2) consistency of results in same litigation; (3) essential fairness between the parties; and, (4) judicial efficiency.

Johnson v. Acadiana Ry. Co., 96-263 (La.App. 3 Cir. 4/16/97), 693 So.2d 226, 228-29. See also Louisiana *105 Land and Exploration Co. v. Verdin, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997).... "[T]he doctrine is discretionary and should not be applied where it would effectuate an obvious injustice or where the former appellate decision was clearly erroneous." Trans Louisiana Gas Co. v. Louisiana Ins. Guar. Ass'n, 96-1477 (La.App. 1 Cir. 5/9/97), 693 So.2d 893, 896.

Ducote v. City of Alexandria, 97-947, p. 3 (La.App. 3 Cir. 2/4/98), 706 So.2d 673, 674-675, writ not considered, 98-1048 (La.5/29/98), 719 So.2d 1275. Moreover, the doctrine applies with equal force to writ decisions as it does to judgments rendered at the conclusion of the appellate process. See First Federal Savings & Loan of Warner Robins, Georgia v. Disiere, 542 So.2d 11 (La.App. 4 Cir.), writ denied, 548 So.2d 311 (La.1989).

Schultz v. Doyle, 98-1113, p. 5-6 (La. App. 3 Cir. 2/3/99), 727 So.2d 691, 693-94.
For the following reasons, we now hold that our decision on the writ application is the law of the case. These very same issues were litigated by LPCF before this court last year in Bridgers v. Southwest Louisiana Hosp. Ass'n., 99-520 (La.App. 3 Cir 11/3/99); 746 So.2d 731, writ denied, 99-3402 (La.2/18/2000); 754 So.2d 965. That case also involved the admission of liability via a settlement, evidentiary rulings and the award of damages in excess of the $100,000.00 settlement.
The Bridgers filed a number of pretrial motions, including motions to exclude the testimony of various expert witnesses, as well as the opinion of the medical review panel....
. . . .
The case was tried before a jury November 2-5, 1998. The jury returned a unanimous verdict in favor of Mr. and Ms. Bridgers and against the LPCF. It found that, as a result of Dr. Vines' malpractice, Ms. Bridgers had been deprived of a seventy-five percent chance of recovery from GBS, and awarded her $767,500.00 in general damages, $666,704.55 in past medical expenses, and $2,693,835.00 in future medical expenses and related benefits. The jury awarded Mr. Bridgers $112,000.00 for loss of consortium. The LPCF appeals, assigning seven errors. The assigned errors can be grouped into two categories: 1) the exclusion of evidence by the trial court; and 2) causation and damages.
LAW AND DISCUSSION
Excluded Evidence
All of the LPCF's assignments of error regarding the exclusion of evidence arise from the pre-trial evidentiary rulings made by the trial court. The LPCF argues that the rulings were erroneous. Specifically, it argues that the medical review panel opinion, the testimony of the medical review panel members, Drs. Gerald Mouton, Joseph O'Donnell and Stephen Snatic, and the testimony of Drs. Charles Knight, Richard Matis, David Morrill, Charles White, Fayez Shamieh, Yadolla Harati, and Randolph Evans were wrongfully excluded from evidence.
. . . .
In making the rulings on the admissibility of evidence on the issues of liability, the trial court considered the overall scheme of the Medical Malpractice Act, including La.R.S. 40:1299.44(C)(5), and the recent line of jurisprudence on this issue ending with Graham v. Willis-Knighton Medical Center, 97-188 (La.9/9/97); 699 So.2d 365.
La.R.S. 40:1299.44(C)(5) provides, in part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, *106 the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
In Stuka v. Fleming, 561 So.2d 1371(La.), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990), the LPCF contested its liability to the plaintiff who had compromised his malpractice claim against one health care provider for $100,000.00, then dismissed the other defendants and sued the fund to recover damages in excess of the $100,000.00 settlement. The court concluded that the only issue to be litigated against the LPCF was the amount of damages sustained by the plaintiff as a result of the admitted malpractice. In reaching this conclusion, the court recognized the impact of its conclusion on the LPCF, stating:
We recognize that this literal interpretation of the statute affords less rights to the Fund when claims against multiple health care providers are settled than when such claims are tried. In the case of a trial the Fund has the opportunity for reduced exposure when more than one health care provider is determined to be liable. But in the case of a settlement with one health care provider for $100,000 the Fund does not have this opportunity in the subsequent litigation with the victim. However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers.
Id. at 1374.
In Graham, 699 So.2d at 368 (citations omitted), the supreme court reached the same conclusion, noting that in Stuka:

This court rejected the Fund's contention that it could still litigate the issue of liability because a payment of $100,000 had not been made on behalf of each named health care provider. Interpreting the overall statute as dispensing entirely with the litigation of liability between the victim and the Fund after one health care provider has paid $100,000 in settlement, this court held that once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission, and "the only issue thereafter between the victim and the Fund is the amount of damages sustained by the victim as a result of the admitted malpractice."
The trial court concluded that since proof of liability and damages of at least $100,000.00 was established by Dr. Vines' settlement with the Bridgers, any evidence addressing the issue of liability, whether it be the liability of Dr. Vines or the liability of others, was irrelevant and inadmissible. At the same time, the trial court recognized that the burden of proof remained with the Bridgers on the issues of [...] damages in excess of $100,000.00.
. . . .
The trial court is vested with vast discretion in connection with the admissibility of evidence. It will not be reversed absent an abuse of that discretion. Maddox v. Omni Drilling Corp., 96-1673 (La.App. 3 Cir. 8/6/97); 698 So.2d 1022, writ denied, 97-2766 (La.1/30/98); 709 So.2d 706.
We find no error with these rulings, including their application to the medical review panel opinion and the panel members' testimony. The trial court prohibited the LPCF's introduction of the opinion and the testimony of the panel members on the issue of liability only. [...] To the extent that they addressed the issue of liability only, they were irrelevant under Stuka, 561 So.2d *107 1371, and Graham, 699 So.2d 365. Furthermore, they would have been confusing to the jury, who had already been instructed that Dr. Vines had admitted liability. We find no abuse of discretion by the trial court with respect to the medical review panel opinion and panel member testimony.
Id. at pp. 3-8; 733-36. We continue to affirm our ruling in Bridgers, that even though La.R.S. 40:1299.47(H) provides that "[a]ny report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, [...] and either party shall have the right to call, at his cost, any member of the medical review panel as a witness," when the liability of the health care provider is admitted under the provisions of La. R.S. 40:1299.44(C)(5), the opinion of the medical review panel is irrelevant as is any testimony of the panel's members, except as to the amount of damages sustained by the victim in excess of $100,000.00. "Evidence which is not relevant is not admissible." La.Code Evid. art. 402.
At the trial of the matter, Appellant presented the testimony of Dr. Jonathan C. Caulkwood. The Defendant also sought to introduce the video-taped deposition of Dr. Craig H. Smith. Both Drs. Caulkwood and Smith practice in the field of neuro-ophthalmology. Appellant complains that the trial judge erred in excluding the testimony of Dr. Smith. The trial judge stated he was excluding the deposition because he found it to be cumulative and "the probative value of the evidence outweighed the prejudicial effect of the evidence." He further stated that introduction of the deposition would violate the principle of efficiency.
La.Code Evid. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Expert testimony, like any other form of evidence, must be relevant; it is subject to the La.Code Evid. art. 403 balance whereby its probative value is weighed against the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." If its probative value is substantially outweighed by these factors, the otherwise relevant evidence is inadmissible.
In Frederick v. Woman's Hosp. of Acadiana, 626 So.2d 467 (La.App. 3 Cir. 1993), writ denied, 93-2991 (La.2/4/94), 633 So.2d 169, this court approved of the Fourth Circuit Court of Appeal's approach to the evaluation of the admissibility of expert testimony, pronounced in Adams v. Chevron, U.S.A., Inc., 589 So.2d 1219 (La.App. 4 Cir.1991), writs denied, 592 So.2d 414, 415 (La.1992). In Adams, the fourth circuit adopted the Christophersen v. Allied-Signal Corp., 939 F.2d 1106 (5th Cir.1991) interpretation of Federal Rule of Evidence article 403 for the evaluation of the admissibility of expert testimony under Louisiana law. That four-inquiry approach is as follows:
(1) whether the witness is qualified to express an expert opinion, (2) whether the facts upon which the expert relies are the same type as are relied upon by other experts in the field, (3) whether in reaching his conclusion the expert used well-founded methodology, and (4) assuming the expert's testimony passes these tests, whether the testimony's potential for unfair prejudice substantially outweighs its probative value under the relevant rules.

Adams, 589 So.2d at 1223. In Frederick, 626 So.2d 467, this court broadened the fourth inquiry to include consideration of the cumulative nature of the expert testimony, since Article 403 provides a balance of probative value not *108 only against unfair prejudice but also against undue delay or waste of time considerations.
The Frederick court reasoned that, in cases where the first three Adams inquiries are positively answered, the following criteria applies to the determination of the fourth inquiry:
Admitting cumulative expert testimony not excludable on other grounds requires its fulfilling three conditions. The first condition questions the relevance of the testimony to be elicited. The second seeks to ascertain that the fact finder will be aided by the testimony. The third, balancing the probative value of this testimony against substantial prejudice, confusion, or inefficiency, guards against undue removal of reason from the fact finding process, as well as waste. Want of any of the three is fatal to admission of an expert's unbridled testimony.
The first condition imposes only a minimal threshold since all relevant evidence is admissible in Louisiana except as otherwise provided by specific constitutional or legislative pronouncements, including the Code of Evidence. LSA-C.E. art. 402.
LSA-C.E. art. 401 reads as follows:
Art. 401. Definition of "relevant evidence"
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
The second condition applies only to expert testimony. Grounded in LSA-C.E. art. 702, it concerns whether the specialized knowledge elicited from the expert will assist the trier of fact to understand the evidence or to determine a fact in issue. The need to comply with this condition represents a significant departure from the law prior to enactment of the Code of Evidence, insofar as previously the inquiry was limited only to asking whether the evidence offered by the expert was "obtained only by means of special training or experience," not whether it would be of actual benefit to the fact finder. See LSA-C.E. art. 702, Comment (a) and 3 J. Weinstein and M. Berger, Weinstein's Evidence p 702[02] (1981), which it cites. See also, e.g., Hunnicutt v. Kent, 434 So.2d 91, 94 (La.App. 5th Cir.1982), writ denied, 435 So.2d 442 (La.1983).
The third condition, mandated by LSA-C.E. art. 403, is applicable to all evidence, fact or expert, and permits exclusion of evidence whose probative value is substantially outweighed by certain dangers that threaten the validity of fact finding or by considerations of judicial economy. It assumes, in fact requires, that the examined evidence is relevant and probative. Judicial administration concerns aside, the chief purpose of this condition is to ensure that the evidence does not deny the fact finder the ability to reach a conclusion based on rational grounds. Id. at 471.
Clay v. International Harvester Co., 95-1572, pp. 5-7 (La.App. 3 Cir. 5/8/96); 674 So.2d 398, 402-04.
We have reviewed the testimony of Dr. Caulkwood and the proffered video taped deposition testimony of Dr. Craig Smith and find the trial judge was correct in excluding it. Dr. Caulkwood's testimony mirrored the testimony Defendant sought to introduce via Dr. Smith. In fact, Dr. Caulkwood had conferred with Dr. Smith on this case and referred to Dr. Smith's opinions in his own testimony. Further, we question the relevance of Dr. Smith's testimony. His testimony, as well as Dr. Caulkwood's, dealt with causation of Mr. McPherson's injury, not the quantum of his damages. Mr. McPherson lost the vision in his left eye. The liability for that was admitted in Dr. Lewis' settlement. The only issue before the jury was how much if any, did Plaintiffs' damages exceed $100,000.00. Therefore, the only medical *109 evidence which was relevant was evidence of any way to restore, in whole or in part, Mr. McPherson's sight and thus lessen his damage for the admitted breach of the standard of care. This alleged error is without merit.
Finally, Defendant questions the quantum of the jury's award. The Louisiana Supreme Court has set out the rules for review of general damage awards as follows:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993); cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, we are called upon to decide if the award in this case "is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of th[is] particular injury to th[is] particular plaintiff under the[se] particular circumstances." Id.
Mr. McPherson, who is left handed and who, before the incident was left eye dominant, lost total vision in his left eye. Dr. O. David Solomon testified that when a person of Mr. McPherson's age loses the sight of one eye "the handicap could be significant." He further stated that some people are totally incapable of driving and that such people are disqualified from many occupations. Based upon an article from the PDR for Ophthalmology, "Evaluation of Permanent Visual Impairment," Dr. Solomon assigned Mr. McPherson a 25% loss of visual function and a 24% impairment of the whole person. Mr. McPherson was fired from his previous employment because his employer felt he was no longer able to do his job. He has not worked since his operation. Mr. McPherson, his wife and his son-in-law, all testified as to the difficulties Mr. McPherson has had in adjusting to monocular vision. He has trouble driving and can no longer hunt or engage in any activity that involves precision. He cannot even catch a baseball.
Mr. McPherson stated that his eye looked "terrible" for several months after the surgery and that he was afraid that the eye would not return to its normal size. He also testified that he was in severe pain during that period of time and that even now, four years later, he still experiences moderate pain if he forgets his medication. His wife corroborated his testimony.
Appellant complains the $300,000.00 in general damages awarded by the jury is excessive. We disagree. In Faulkner v. State, Depart. of Transp. & Development, 25,857, 25,858, pp. 14, 15 (La.App. 2 Cir. 10/26/94); 645 So.2d 268, 278, writs denied, 94-2901 & 94-2908 (La.1/27/95); 649 So.2d 390 (emphasis added), the court affirmed the award finding it neither too high nor too low, noting that:
[T]he trial court awarded Timothy Faulkner $75,000.00 general damages for pain and suffering and permanent injuries (occasional blurred vision). Faulkner's injuries were primarily to the left side of the face involving the left eye *110 and a cut on the ear. The injury to Faulkner's eye was characterized by his treating physician, Dr. Lusk, as a serious injury. [...] Dr. Lusk stated that a blunt injury of this type is mildly painful, but usually not severely painful.
See also Moolekamp v. Rubin, 531 So.2d 1124 (La.App. 4 Cir.1988).
Additionally, in Otnott v. Morgan, 93-684 (La.App. 4 Cir. 3/15/94); 636 So.2d 957, writ denied, 94-1743 (La.10/28/94); 644 So.2d 650, a case medically on point with this one (plaintiff lost total vision in one eye following surgery), the fourth circuit affirmed a general damage award of $300,000.00 citing the trial judge's reasons for her award: "The loss of vision in one eye was devastating to Mr. Otnott. His work as a police officer as well as his personal and family life were affected. He suffered from anger, depression and humiliation. The Court's general damage award is based on this finding." Id. at p. 7, 961. Although we are not privy to the jury's reasons for its award in this case, we note that Mr. McPherson's loss of vision was no less devastating to his work, family and social lives.
Therefore, for the reasons stated above, we affirm the judgment of the trial court. All costs of this appeal are assessed against Appellant, The Louisiana Patients' Compensation Fund.
AFFIRMED.
AMY, J., dissents and assigns reasons.
AMY, J., dissenting.
I respectfully dissent. In my opinion, the decision to exclude the Medical Review Panel opinion and the testimony of its members was clearly erroneous. As I find the portion of the writ opinion affirming this decision to be clearly erroneous as well, the law of the case doctrine, which is discretionary, should not be applied in this case. Ducote v. City of Alexandria, 97-947 (La.App. 3 Cir. 2/4/98); 706 So.2d 673, writ not considered, 98-1048 (La.5/29/98), 719 So.2d 1275.
At issue here is the apparent conflict of two statutory provisions. La.R.S. 40:1299.44(C)(5) provides:
At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.

(Emphasis added.) Thus, as explained by this provision, Dr. Lewis'"liability" was established by his settlement of the claim.
In Graham v. Willis-Knighton Medical Center, 97-0188, p. 15 (La.9/9/97); 699 So.2d 365, 372, the Louisiana Supreme Court explained:
We now conclude that the legislative intent of "liability" in Section 1299.44 C(5) was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at trial against the Fund, the *111 plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.
While it appears that the existence of malpractice was resolved by the settlement, causation of damages exceeding $100,000.00 was still at issue at the trial.
While La.R.S. 40:1299.44(C)(5) provides that liability is established and the supreme court's pronouncement in Graham shapes the extent of that "liability," La. R.S. 40:1299.47(H) clearly provides:
Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by a claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify. A panelist shall have absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed by this Part.
(Emphasis added.) No distinction is made in this seemingly mandatory provision for cases in which a settlement has established the physician's liability for the first $100,000.00 of damages. Therefore, it seems clear that the panel's opinion and the testimony of its members shall be admitted at the urging of either party.
In the face of this clear provision and the requirement that the plaintiffs prove causation in excess of $100,000.00, the plaintiffs contend that this case requires the exclusion of both the opinion and the members' testimony as neither is relevant to causation or damages. I am aware that the facts of this case are unique in that the defendant is an anesthesiologist while two of the panel members were of different specialties. Furthermore, the panel concluded that the defendant did not breach the standard of care. Thus, the panel members' testimony would appear to address standard of care issues and nothing more, as would the panel opinion. This standard and breach are established by the settlement. Nonetheless, the statute clearly requires that both shall be admissible. The legislature has made the policy determination that the parties shall have access to this evidence, a determination that is clear from the wording of the law and one that the parties have a right to rely on. In my opinion, the issue here is not one requiring interpretation of the law, but is one focused on the application of a clear and unambiguous law. Although it may be difficult to see how La.R.S. 40:1299.44(C)(5) and La.R.S. 40:1299.47(H) work together in cases such as the one before us, we must apply the law as written. See La.Civ.Code art. 9.
Neither would I follow the recent case of Bridgers v. Southwest Louisiana Hosp. Ass'n., 99-520 (La.App. 3 Cir. 11/3/99); 746 So.2d 731, writ denied, 99-3402 (La.2/18/00); 754 So.2d 965. While it appears, in Bridgers, that a hearing for particularized findings as to the type of evidence available from the panel was never held, it seems that, ultimately, both the panel and the testimony of its members could have been completely excluded, as it was in this case, as the panel in Bridgers found no breach of the standard of care; the same finding as in this case. The absolute exclusion of the opinion and testimony of the panel works against La.R.S. 40:1299.47(H) which provides that both shall be admissible. Although the reasoning in Bridgers is considered and tailored to accommodate the underlying friction between the two statutory provisions, I do not conclude that the full extent of that reasoning should be adopted.
In fine, as the Medical Review Panel opinion and the testimony of its members were improperly excluded due to the requirements of La.R.S. 40:1299.47(H), I conclude that the judgment should be vacated and the matter remanded for a new trial. Accordingly, I dissent.