hYELVERTON, J.
Scott Lynn Perkins, surviving husband of Angela Sigler Perkins, sued Dr. Stephen Ayers and Coastal Emergency Medical Services, Inc., the service provider for the emergency room at the West Calcasieu Cameron Hospital, for medical malpractice. On February 24,1993, his seventeen-year-old wife was brought to the emergency room of West Calcasieu Cameron Hospital with severe abdominal pain. She reported that she had been vomiting and had diarrhea for four days and that she had seen a doctor in DeQuincy two days earlier who told her to get to a hospital if the symptoms persisted. She was seen at the hospital by Dr. Ayers, who diagnosed her with gastritis, gave her a GI cocktail and pain medication, and discharged her. Her condition worsened, and on February 28, 1993, she was admitted to the University Medical Center in Lafayette where she underwent abdominal surgery and ten days later, she died.
The Plaintiff sued for his damages for his wife’s death and asserted a survival action. Mr. Perkins settled with Dr. Ayers and Coastal Medical for the $100,000 statutory limit for their liability under Louisiana Revised Statute 40:1299.41, et seq. The trial court approved the settlement on April 29,1999. The Plaintiff then sued the Louisiana Patient’s Compensation Fund (PCF) for additional damages. After the PCF’s intervention, the Plaintiff filed a motion for summary judgment alleging entitlement to the $500,000 statutory cap for medical malpractice. The trial judge granted the summary judgment for that amount, plus $36,758.59 in medical expenses.
The PCF appeals. We affirm.
Summary judgments are reviewed on appeal de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. The guidelines for obtaining summary judgment are stated in Louisiana Code Civil | ^Procedure Articles 966 and 967. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” Article 966(B). Among the guidelines of the article is that “summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.” Article 966(A)(2). The burden of proof remains with the movant. Article 966(C)(2). When a motion for summary judgment is made and supported as provided, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. Article 967. If he does not respond, summary judgment, if appropriate, shall be rendered against him. Article 967.
In a medical malpractice action, the plaintiff has the burden of proving, by a preponderance of the evidence, (1) that the doctor’s treatment fell below the standard of care expected of a physician in his medical speciality, and (2) the existence of a causal relationship between the alleged negligent treatment and the injury sustained. Fusilier v. Dauterive, 2000-151 (La.7/14/00), 764 So.2d 74. Louisiana Revised Statute 40:1299.44(0(5) states that in approving a settlement, the court shall consider the liability of the health care provider as admitted and established when $100,000 has been paid. In a medical malpractice case, summary judgment is an appropriate vehicle both as to findings of liability and damages. Bijou v. Alton Ochsner Medical Found., 95-3074 (La.9/5/96), 679 So.2d 893; Bramlet v. The Louisiana Patient’s Compensation Fund, *1067 98-1728 (La.11/6/98), 722 So.2d 984. Where a medical malpractice victim is clearly entitled to the statutory limit of $500,000, a summary | .-¡judgment will eliminate the need for unnecessary litigation and promote judicial economy. Bijou, 679 So.2d 893.
In the present case, the harm was Mrs. Perkins’ death. The Plaintiffs offerings on motion for summary judgment as to liability were Dr. Ayers’ admission of liability, the medical review panel’s finding that Dr. Ayers’ lack of action likely contributed to the patient’s demise, and lay testimony establishing the progression of events from Dr. Ayers’ discharge of the patient until her death a few days later following intestinal surgery at University Medical Center.
The offerings included depositions of family and friends who attended the deceased constantly during her last illness. Mrs. Perkins suffered terribly before she died. The offerings included the deposition of her husband explaining his loss, the deposition of an economist concluding that the economic impact of her death was $584,329, and the joint motion for approval of the malpractice settlement which contained Dr. Ayers’ admission of liability. The medical review panel reported:

Based on the patient’s four day history of the present illness specifically nausea and vomiting which was unrelieved by previous measures taken by the patient’s family physician, Dr. Ayers should have worked her up further. A minimum of electrolytes and abdominal x-rays, and possibly IV rehydration was indicated. Although there are complicating factors, ultimately Dr. Ayers lack of action likely contributed to the patient’s demise.

Mr. Perkins was devoted to his wife, they were a loving couple, and his great loss was established. The victim went through a slow and agonizing death. Her head and body swelled beyond recognition. She vomited what witnesses believed were the contents of her own bowels. When she was conscious, she asked if she was going to die.
 In Graham v. Willis-Knighton Medical Center, 97-188, p. 15 (La.9/9/97), 699 So.2d 365, 372, the supreme court was concerned with the extent of plaintiffs burden of proving causation after an admission of liability is triggered by a $100,000 settlement. The court stated:
[T]he legislative intent of “liability” in Section 1299.44C(5) was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.
The settlement with Dr. Ayers relieved Mr. Perkins of the obligation of proving (1) the standard of care and (2) a breach by the healthcare provider. McPherson v. Lake Area Medical Center, 99-977 (La. App. 3 Cir. 12/29/99), 755 So.2d 972, appeal after remand 99-1876 (La.App. 3 Cir. 5/24/00), 767 So.2d 102, unit denied, 2000-1928 (La.9/29/00), 770 So.2d 353. Mrs. Perkins lost her life as a result of Dr. Ayers’ substandard care. Liability for her death was admitted in Dr. Ayers’ settlement. The only issue left was how much, if any, did her husband’s and her estate’s damages exceed $100,000 on account of Dr. Ayers’ admitted malpractice. We find on the basis of the summary judgment evidence evaluated de novo that the fault of the healthcare provider caused damages far in excess of $500,000. Mr. Perkins met his burden of proof and was entitled to judgment unless the adverse party showed that there was a genuine issue of material fact left for trial.
In opposition to the motion for summary judgment, the PCF offered the October 1999 affidavit of Dr. Ayers. In this remarkable affidavit, Dr. Ayers re *1068 canted his April 1999 admission of liability, and concluded that the patient died because of complications of abdominal surgery at University Medical Center, and not because of any fault or substandard care on his part.
| ¡¿The PCF’s appeal argues that this affidavit raises genuine issues of material fact regarding causation of damages in excess of $100,000. It argues that the affidavit alleged specific facts showing that there were genuine issues for trial. In the affidavit Dr. Ayers gave his opinion regarding the cause of Mrs. Perkins’ death. Underscoring that opinion, he injected a factual defense to his own liability, stating that after he saw her, she was discharged home with instructions to return in 24 hours if her symptoms returned, and that she did not return as instructed. Presumably interpreting the University Medical Center’s records, Dr. Ayers’ affidavit attributed Angela Perkins’ death to “known and recognized complications from abdominal surgery,” and denied that the abdominal surgery was necessitated by any fault or substandard care on his part. Although he never blamed anyone else, in his affidavit Dr. Ayers declared that even if he was guilty of any fault or substandard care, it was not the cause of the patient’s death.
The affidavit summarized: “Here, the patient died as a result of complications from abdominal surgery.... The abdominal surgery was not necessitated by any fault or substandard care on the part of Affiant.” In effect, Dr. Ayers’ affidavit denied that he was liable for even the first $100,000.
The PCF cannot create an issue of material fact by introducing the affidavit of the malpracticing physician recanting his admission of liability and substituting for that admission a scenario removing any causative relationship between his fault and the harm suffered.
Because the Mover’s offerings in support of summary judgment met the proof requirements that the admitted malpractice caused damages in excess of $500,000, and because the PCF’s response fails to show there exists a genuine issue for trial, the summary judgment is affirmed at appellant’s costs.
AFFIRMED.
AMY, J., dissents and assigns reasons.