829 So.2d 620 (2002)
Aldus Gene BERGERON
v.
STATE BOXING AND WRESTLING COMMISSION, Mid South Wrestling, Inc., Frankie J. Jeffery and Jason Dupre.
No. 2001-CA-2247.
Court of Appeal of Louisiana, Fourth Circuit.
October 2, 2002.
*621 Kirk A. Guidry, Paul H. Due', B. Scott Andrews, Due', Caballero, Price, Guidry, Piedrahita & Andrews, Baton Rouge, LA, and Russ M. Herman, Maury A. Herman, Steven J. Lane, Herman, Herman, Katz & Cotlar, New Orleans, LA, for Plaintiff/Appellee.
William S. Culver, Jr., Assistant Attorney General, Richard P. Ieyoub, Attorney General, Louisiana Department of Justice, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR.).
JOAN BERNARD ARMSTRONG, Judge.
This is a personal injury action. The plaintiff, Aldus Gene Bergeron, was an appliance store employee and a novice professional wrestler. He was rendered a quadriplegic, due to a spinal cord injury, as a result of an accident in a wrestling match. Mr. Bergeron filed suit against his wrestling opponent, Jason Dupre, the wrestling match promoter, Frankie J. Jeffrey, and Mr. Jeffrey's company, Mid-South Wrestling, Inc. Mr. Bergeron also sued the State Boxing and Wrestling Commission of Louisiana.
Prior to trial, Mr. Bergeron dismissed his claims against Mr. Dupre, Mr. Jeffery and Mid-South. He proceeded to trial against the Commission. The jury found liability and awarded various amounts of special and general damages. The jury apportioned negligence/fault as follows: the Commission 30%, Mr. Jeffrey 30%, Mr. Dupre 20% and Mr. Bergeron himself 20%. The Commission appeals and Mr. Bergeron answers the appeal. The Commission appeals as to the amounts of some of the special damages and as to the allocation of fault to the Commission. Mr. Bergeron appeals as to the amounts of certain special damages and as to the allocation of fault to the Commission. As we find that the jury's findings of fact were not clearly wrong-manifestly erroneous, we will affirm the judgment below.
It is undisputed that the wrestling match in which Mr. Bergeron was injured was a sham, a fake match in which Mr. Bergeron was the predetermined "winner" because he was the "hometown" wrestler. It was also agreed prior to the match that, after the match was over, and Mr. Bergeron was declared the winner, Mr. Dupre would "attack" Mr. Bergeron to make it appear that there was a "grudge" between the two wrestlers which would, in turn, increase interest in another match between them. During the post-match "attack", Mr. Bergeron's head/neck was slammed into the mat, which impact rendered him a quadriplegic.
The Commission's first argument on appeal is that the trial court erred in allowing *622 the testimony of Mr. Bergeron's expert rehabilitation specialist Bobby S. Roberts. This expert testimony issue ultimately goes to the amount of special damages. Specifically, Mr. Roberts testified as to certain future medical and attendant care costs that would be required. The Commission objected at trial to Mr. Roberts' qualifications and complains on appeal as to the reliability of his testimony.
The Commission argues that Mr. Roberts' testimony did not meet the requirements for expert testimony established in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as adopted in Louisiana in State v. Foret, 628 So.2d 1116 (1993). While the Commission did object at trial to the qualifications of Mr. Roberts, it does not appear to have made a Daubert objection nor to have asked for a Daubert hearing.
In any case, we do not believe that the trial court erred, under Daubert or otherwise, in allowing Mr. Roberts' testimony. The trial court has great discretion in allowing expert testimony. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073; Clement v. Griffin, 91-1664 (La.App. 4 Cir. 3/3/94), 634 So.2d 412, writ denied, 94-0717, etc. (La.5/20/94), 637 So.2d 478. The admissibility of testimony of rehabilitation experts, such as Mr. Roberts, is well-established. See Bernard v. Lott, 95-0167 (La. App. 4 Cir. 12/28/95), 666 So.2d 702, writ denied, 96-0271 (La.3/22/96), 669 So.2d 1232; Bridgers v. Southwest Louisiana Hospital Association, 99-520 (La.App. 3 Cir. 11/3/99), 746 So.2d 731, writ denied, 99-3402 (La.2/18/00), 754. So.2d 965; Edwards v. Daugherty, 97-1542 (La.App. 3 Cir. 3/10/99), 729 So.2d 1112, writ denied, 99-1393, 99-1394 (La.9/17/99), 747 So.2d 1105; Bergeron v. Blake Drilling & Worker Co., 599 So.2d 827 (La.App. 1st Cir.), writ denied, 605 So.2d 1117 (La.1992).
Mr. Roberts has both Bachelor's and Master's degrees in vocational evaluation from Auburn University. In graduate school, he specialized in rehabilitation of quadriplegics and paraplegics. He taught at Auburn University and at LSU Medical Center in New Orleans. He has 28 years of experience in rehabilitation evaluation and cost estimation and specializes in spinal cord injuries. He has been accepted as an expert witness previously in State and federal courts in Louisiana. The trial court did not err by finding Mr. Roberts qualified to testify as an expert in this case.
Mr. Roberts relied upon Mr. Bergeron's medical records, the trial testimony of Mr. Bergeron's physician, appropriate government, academic and other medical/rehabilitation publications, cost quotes form physicians and others and, of course, the undisputed fact of Mr. Bergeron's physical helplessness due to quadriplegia. Thus, Mr. Roberts had reasonable factual bases for his expert opinions.
In sum, we cannot find that the trial court erred by allowing Mr. Roberts' expert testimony.
The Commission's next argument on appeal is that the jury was clearly wrong-manifestly erroneous in awarding damages of $4,900,000 for future medical expenses and attendant care expenses. The Commission focuses upon what it contends to be flaws in the testimony of Mr. Roberts but, in fact, the testimony of Mr. Bergeron's several physicians was also important to establishing his claim for future medical expenses and attendant care expenses. We also note that the Commission did not present any expert testimony on this topic and, thus, the testimony of Mr. Roberts was unrebutted.
*623 It is uncontradicted that Mr. Bergeron's life expectancy is 40 years and that he will need wheelchair accessible housing, an electric wheelchair, a wheelchair van, proper sleep accommodations, attendant care, and future medical expenses, medications and supplies. Mr. Bergeron's housing needs, peculiar to his quadriplegia, were supported by published standards of the American National Standards Institute and by Mr. Roberts' testimony. Mr. Bergeron's physicians testified that he will need someone to attend to him at all times, for the rest of his life, because he cannot care for himself at all. His physicians also testified that Mr. Bergeron will require anti-depressants, a catheter and medication to relax his bladder, adult diapers, special padding, chairs, cushions and bedding to combat adverse skin conditions, special appliances for his bowels and bladder, preventative and other medical care for skin ulcers and spasms, and other medical care peculiar to his quadriplegia and that he will require all of these for the rest of his life. His physicians also testified that Mr. Bergeron will require increasingly frequent hospitalizations for intravenous antibiotics, that he will need surgery for bed sores, monthly urinalysis and cultures and bladder x-rays and other medial procedures and that he will require these treatments for the rest of his life. Mr. Roberts testified that Mr. Bergeron will require a Licensed Practical Nurse for 16 hours a day, to perform digital bowel stimulation, to attend to his catheter, to evaluate his skin, to work with his joints and muscles and to monitor his nutrition, and an attendant for the other eight hours a day to deal with emergencies.
The overall testimony supported a present value of $4,900,000 for Mr. Bergeron's future medical and attendant care. We cannot say that the jury was clearly wrong-manifestly erroneous in its award of damages for future medical and attendant care.
The Commission's next argument on appeal is that the jury was clearly wrong-manifestly erroneous in allocating 30% negligence/fault to the Commission and only 20% to Mr. Bergeron and that the negligence/fault should be allocated 50% to Mr. Bergeron and none at all to the Commission. Specifically, the Commission argues that nothing that it did, or failed to do, caused Mr. Bergeron's injuries and that, instead, Mr. Bergeron's injuries were caused by Mr. Bergeron's alleged failure to protect himself during the wrestling match.
The Commission concedes that a number of the statutes and regulations applicable to wrestling matches, statutes and regulations that were the Commission's responsibility to enforce, were not enforced. One of the statutes not enforced by the Commission prohibits sham or fake wrestling competitions. La. R.S. 4:75 and 76. Mr. Dupre's "attack" on Mr. Bergeron after the conclusion of the wrestling match occurred only because the match was a sham, fake contest. Also, the Commission's own regulations require that all wrestlers leave the ring as soon as the decision has been announced. 46 La. Admin. Code § 345 and Code § 527. Again, but for the post-match "attack" by Mr. Dupre upon Mr. Bergeron, there would never have been any injury to Mr. Bergeron. The Commission had a representative at the Bergeron Dupre match but, nevertheless, the Commission failed to enforce the law and its own regulations.
The Commission did present expert testimony and other evidence that Mr. Bergeron did not take proper care to protect his head and neck. However, the jury heard that evidence and, obviously, gave it weight because they assigned 20% of the negligence/fault to Mr. Bergeron. We *624 cannot alter the jury's allocation of fault as long as it is reasonable in light of the record as a whole. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607. In this case, considering the evidence as to negligence/fault of the Commission, and the evidence of negligence/fault of Mr. Bergeron, we cannot say that the jury's allocation negligence/fault, 30% to the Commission, and 20% to Mr. Bergeron, was unreasonable.[1]
The Commission's last argument on appeal is that the jury's award of damages for lost future earnings is clearly wrongmanifestly erroneous. Mr. Bergeron's economic expert testified that, at the time of the injury, Mr. Bergeron was earning $16,742 per year as a supervisor of delivery and installation personnel at an appliance store which would be equal to $346,759 in lost future wages. However, Mr. Bergeron's employer testified that, if Mr. Bergeron had stayed with the company, he would be earning approximately $30,000 annually. Mr. Bergeron's economic expert witness then testified that, based upon annual earnings of $30,000, the future lost earnings were $621,357. The jury awarded $507,095.63 for lost future earning. The Commission argues that the jury was clearly wrong-manifestly erroneous in awarding more than the amount of future lost wages based upon the $16,742 annual earnings, i.e., $346,759. The crux of the Commission's argument is that there was no guarantee that Mr. Bergeron would have advanced in earnings to $30,000 annually.
Mr. Bergeron's employer testified that Mr. Bergeron was a dependable employee, who was on a career track, and, comparing him to similar employees, he would probably be earning $30,000 annually if still employed. Mr. Bergeron testified that he planned to stay with the appliance store. Based upon this testimony, the jury reasonably could conclude that Mr. Bergeron would have earned more than $16,742 annually and as much as $30,000 annually. See generally Whatley v. RTA, 563 So.2d 1194 (La.App. 4th Cir.1990); O'Bryan v. Folk Construction Co., 594 So.2d 900 (La. App. 4th Cir.1991). Thus, we cannot say that the jury was clearly wrong-manifestly erroneous as to the amount of lost future wages.[2]
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
TOBIAS, J., CONCURS.
TOBIAS, J., concurs.
I agree with reasoning and conclusions of the majority. I respectfully concur to note that the law imposes upon the State Boxing and Wrestling Commission a duty to prevent fake and sham wrestling matches. La. R.S. 4:75 and La. R.S. 4:76. Pursuant to that statutory mandate, the Commission adopted a regulation requiring the contestants to depart the wrestling ring once the contest decision was announced. La. Admin. Code §§ 46:345 and 527. The Commission failed to enforce its own regulations, which resulted in injury to the plaintiff.
*625 This court is required to enforce the law as enacted by the legislature. The legislature needs to review the matter if it is dissatisfied with the result in this case.
NOTES
[1] For the same reasons, we do not accept Mr. Bergeron's argument that the jury's allocation of fault to the Commission was clearly wrongmanifestly erroneous and should be increased.
[2] On the other hand, the jury was not bound to accept completely the assertion that Mr. Bergeron would be earning exactly $30,000. A reasonable jury might accept that assertion only in part. Thus, we do not agree with Mr. Bergeron's argument that the jury was clearly wrong-manifestly erroneous in awarding less than $621,357 for lost future wages.